MONTGOMERY COUNTY et al., Appellees, v. ARTHUR B. CASE, Appellant.

No. 40154.

SEPTEMBER 22, 1930.

REHEARING DENIED APRIL 10, 1931.

R. J. Swanson, C. A. Reese, for appellant.

Floyd E. Billings, Paul Richards, for appellees.

FAVILLE, J.—The ultimate question involved in this appeal is this: does the appellant own the abandoned railroad right of way that extends across his farm?

The appellant owns two tracts of land, being the Southeast Quarter of Section 28, Township 72, Range 36, and the North Half of the Northwest Quarter of the Northeast Quarter of Section 33, in said township and range. The tract or strip of land involved in this suit is an abandoned railroad right of way which passes diagonally across the said two tracts comprising the appellant's farm.

■ I. The first question that confronts us is with regard to the burden of proof. Under the issues in this case, no question is raised as to the title to the portion of appellant's land lying outside of the abandoned railroad right of way. Appellant is concededly entitled to damages for the appropriation of this portion of his farm, and the question is later to be submitted to a jury. Appellant contends, however, that he owns the abandoned railroad right of way and is entitled to damages for its appropriation by the appellee county for highway purposes. Appellee denies such claim and asserts ownership of said abandoned right of way to be in itself, and does not seek to condemn such tract. In this situation the burden is upon the appellant to establish his ownership of the said abandoned railroad right of way, and his right to recover damages for its appropriation by the appellee for highway purposes.

It is not essential in the determination of this case for us to inquire whether or not appellee has a good title to said abandoned railroad right of way. The ultimate question is whether the appellant has title thereto so as to entitle him to compensation for its appropriation. If the title is in appellee, or a third person, the appellant has no standing to claim damages for its appropriation.

■ II. We first consider the record title as to said Southeast Quarter of Section 28. Said subdivision is a full quarter section of land containing 160 acres. Prior to March 19, 1909, one Thos. P. Case, the father of the appellant, owned said quarter section of land. On October 27, 1911, said Thos. P. Case and his wife conveyed by warranty deed to the Atlantic Northern & Southern Railway Company the following described tract:

"A strip of land 100 feet, fifty feet on either side of the center line of grantee's railway track, through, over and across the Southeast Quarter of Section 28, township 72 North, range 36 west of the 5th P.M., Iowa, containing 6.05 acres. (Said right of way is more particularly described in the maps and plats of said railway company now on file in the Auditor's Office of Montgomery County, Iowa.)"

The deed contained the usual covenants of warranty and was filed for record October 27, 1911. On August 9, 1913, the said Atlantic Northern & Southern Railway Company, by its

receiver's deed, conveyed said described tract to the Atlantic Southern Railroad Company. On October 19, 1915, said Atlantic Southern Railroad Company conveyed to one Abeles, who subsequently died and under his will said property passed to one Julius D. Abeles. On July 8, 1918, said Julius D. Abeles conveyed said right of way strip of land to appellee. On February 27, 1918, said Thos. P. Case executed and delivered to appellant a warranty deed by which he conveyed to the appellant:

"All of the South East Quarter of Section Twenty Eight (28) in Township Seventy Two (72) North of Range Thirty Six (36) West of the 5th P.M. in all 160 acres more or less as per the U. S. Government survey thereof *save and except the right of way of the Atlantic Northern and Southern Railroad.*"

On February 6, 1926, said original grantor, Thos. P. Case, conveyed to the appellant all of said quarter section which had been excepted in the original deed to the appellant, said deed reciting:

"It being the intention of this deed to convey what was described in the deed last above described as the right of way of the Atlantic Northern and Southern railroad."

This deed was not recorded until after the deed to appellee county had been placed of record.

It is very clear that the tract in question did not pass to the appellant under the deed of February 27, 1918, for the obvious reason that said tract was expressly and explicitly reserved from said deed. Whether or not any title passed to the appellant by virtue of the deed of February 6, 1926, depends upon whether there was any reversion or revestment of the title to said right of way in the original grantor, Thos. P. Case, a question which we shall discuss later. Unless there was such reversion, the title of record to said tract never became vested in the appellant.

Appellant interposed many objections to appellee's title, such as that the power of attorney under which a certain conveyance was made was not broad enough in its terms to authorize the execution of such conveyance; that certain acknowledgments were insufficient and defective and that the description in certain of the conveyances upon which appellee's title rests was insufficient. We deem it unnecessary to discuss these mat-

ters in detail for the reason that, as heretofore stated, the appellant must rely upon the strength of his own title to the premises in controversy in order to sustain his contention that he is entitled to compensation for the appropriation of the same by the county for highway purposes. It matters not in whom the title may be vested, or whether there have been defects in conveyances unless it be established in some way by the appellant that he has title to and an interest in the premises sought to be appropriated. Therefore, at this point, save and except for the one question of reverter, we hold that the appellant failed to show a record title to the tract in the Southeast Quarter of Section 28 in himself.

█ III. We now turn to the record title in regard to the North Half of the Northwest Quarter of the Northeast Quarter of Section 33. This subdivision contains 20 acres. The record shows that this tract originally belonged to one Newburg, and on October 17, 1910, said Newburg conveyed a strip of land across said premises to the Atlantic Northern & Southern Railway Company. The deed described a strip 100 feet wide across said premises, which the evidence shows was approximately one and one half acres. On December 3, 1918, said Newburg conveyed to the appellant by warranty deed the North Half of the Northwest Quarter of the Northeast Quarter of Section 33, Township 72, Range 36, the deed containing the recital: "Containing 18½ acres, more or less". The deed to the 100-foot strip across said premises was of record at the time the appellant acquired his deed from Newburg, and said railroad had in fact been constructed on said right of way prior to said time.

Again reserving a possible question of reversion, we reach the conclusion that as to this tract the appellant has failed to show record title thereto in himself. As previously stated, whether or not the title to said tract rests in the appellee or some other party is not necessary for us to decide. Costello v. Burke, 63 Iowa 361, 364.

IV. Appellant contends that there was a reversion of the title to the railroad right of way when the railroad company abandoned the use of said right of way for purposes of a railway; that said reversion was to the original owner of said tract, and that the appellant has acquired title thereto by conveyance from said original owner.

The railroad abandoned the use of said right of way for railroad purposes on or about December 31, 1914. Appellant took actual possession thereof immediately thereafter. Railways enjoy the power of eminent domain in this state. Code, Sec. 7807 and Sec. 7808.

Code, Secs. 7817, 7818, and 7819 provide for any other corporation acquiring the right of way over an abandoned right of way of any railroad.

Chapter 367 of the Code is in the Title on Certain Internal Improvements and deals with the subject of reversion. Section 7862, a part of said chapter, is as follows:

"If a railway, or any part thereof, shall not be used or operated for a period of eight years, or if, its construction having been commenced, work on the same has ceased and has not been in good faith resumed for eight years, the right of way, including the roadbed, shall revert to the persons who, at the time of the reversion, are owners of the tract from which such right of way was taken."

The statutes have not always been in this form but have been re-arranged, codified, and amended since the original enactments. It is evident that a railway corporation, under the statute, may acquire "so much real estate as may be necessary for the location, construction, and convenient use of its railway" "by condemnation or otherwise." The term "or otherwise" would naturally include purchase, lease, or gift.

The statute provides that in case a railway or any part thereof *shall not be used or operated* for a period of eight years, the right of way, including the roadbed, shall revert to the persons who at the time of the reversion are owners of the tract from which said right of way was taken. The original enactment, Ch. 91 of the Acts of the Thirteenth General Assembly, dealt only with abandonment of a right of way and its acquisition by another corporation. This was the provision in the Code of 1873, Secs. 1260 and 1261. Chapter 15 of the Acts of the Eighteenth General Assembly (1880) repealed the existing law and enacted a new statute in lieu thereof, which for the first time contained a provision substantially as now embodied in Code Sec. 7862, providing for a reversion of a roadbed or right of way to the owner of the tract from which it was taken, in

the event that said roadbed or right of way shall not be used or operated for a period of eight years.

The final question for our determination at this point is whether or not a roadbed or right of way acquired by a railway corporation by full warranty deed, rather than by condemnation, is subject to the terms and provisions of this statute, and reverts under the conditions named in the statute.

The identical question was before us in Watkins v. Railway Co. (1904), 123 Iowa 390. In that case the plaintiff claimed title to an abandoned right of way that had been originally conveyed by deed, on the ground that it had reverted to him. We said:

"But, before plaintiff can recover, he must show that the title thereto reverted to him by this nonuser. Remembering that this strip was conveyed by Mock, the original owner, to the defendant or its grantors by deed which would ordinarily convey a fee-simple title, and that plaintiff must base his claim on reversion thereof to him, we have to inquire, first, whether or not nonuser by the defendant or its grantees operated as an abandonment of its title; and, second, whether, conceding there was an abandonment, title passed to plaintiff, as an adjoining owner of the strip. It is contended that defendant took no greater title through its deed from Mock than it would have acquired by condemnation proceedings under the statute, whereby it receives simply an easement in the land for railway purposes. If this be true, it is difficult to see how the fee could pass through nonuser of the easement from Mock, who at all times owned it, to the plaintiff, who never received any conveyance therefor. Plaintiff's claim to it is not for public purposes, but for his own private benefit and advantage; and the Legislature can hardly be supposed to have intended to pass title taken for public use through *ad quod damnum* proceedings to a private person, even through nonuser of the title or easement obtained thereby. If such is to be the construction of the statutes, the writer, and perhaps other members of the court, would have no hesitation in holding them unconstitutional. But we need not speculate on this point. There is no doubt that the deed from Mock to the defendant conveyed a fee-simple title to the strip of land. * * * In the instant case the deed to the defendant was not of a right of way, or for railway pur-

poses, but of a fee-simple title. * * * There can be no doubt that Mock parted with the fee-simple title to this strip of land, and that defendant, a corporation duly organized, received that fee. If it cannot hold it, it is because of some limitation in its charter or some provision of law. We find no provision of law which prevents its acquiring such title by purchase, and nothing appears as to its charter powers. * * * It follows, then, that, as defendant company received a deed in fee simple for the strip of land in controversy, there is nothing to revert or pass either to Mock or to plaintiff, who claims it by reason of being an adjoining owner.''

There was an extensive dissenting opinion in said case.

We have adhered to the rule therein announced. Des Moines C. R. Co. v. City of Des Moines, 183 Iowa 1261.

The doctrine of *stare decisis* is applicable.

V. Appellant contends, however, that there is a distinction between the instant case and our other cases, in that the deed in the instant case shows upon its face that it was not intended to convey a fee but only to create an easement.

Appellant relies upon Smith v. Hall, 103 Iowa 95. We distinguished this case in the Watkins case, supra, saying:

"The conveyance in the Smith-Hall Case was not of a fee-simple title, but of a right of way only.''

We are disposed to construe the deeds in the instant case as conveying the fee simple title and not a right of way only.

VI. Appellant contends that the deed from Case was executed in pursuance of a written contract between Case and the Railroad Company providing for the conveyance of a mere easement in the premises, and that said deed should be reformed so as to merely create an easement in the Railroad Company and not a fee title to the premises. The appellant failed to prove any such alleged contract between Case and the Railroad Company. The written instrument offered by appellant as an exhibit was not signed by anyone, and there is no proof whatever of delivery. There was no basis in the record for the claimed right to reformation of the deed and the court did not err in denying such reformation.

VII. Appellant claims title to the property in question by adverse possession. To establish such claimed title, it is in-

cumbent upon the appellant to not only establish the fact of actual possession, but also that such possession was continued, uninterrupted, visible, open, notorious, distinct, hostile and adverse to the claims of any other party, and under ·a color of title or claim of right. The burden of showing adverse possession rested upon the appellant. The presumptions are in favor of the appellee as the holder of the legal title to the premises. Harris v. Brown, 184 Iowa 1288. The evidence shows that in 1910 the Railroad Company constructed a railway track upon the strip of land in question and operated a railroad thereon until December 31, 1914, since which time there has been no operation of said railroad. ·The appellant testified as a witness in his own behalf to the effect that as soon as the railroad company ceased to operate its railroad, to wit, on or about January 1, 1915, he took actual possession of the said strip of land and has retained such possession thereof ever since.

He testified:

"As soon as they abandoned it in December, 1914, I fenced it. There was a fence across each end of this right of way, and there was one running up to where I lived. I put a gate across the road, and open the gates to my pasture and run the stock right in it. I farmed the right of way. Raised corn, wheat and oats on it. I have used the right of way as a part of my farm since January 1, 1915. I first raised a crop on it in 1919; then in 1920, 1921, 1922, 1923, 1924, 1925 and a part of a crop off of it in 1926. Prior to the time I raised crops on the right of way, I pastured it. * * * Since I took possession of the right of way in January, 1915, I have not been molested in my possession of it until the Highway Commission came into the right of way on April 22, 1926. * * * Well, I took possession in January, 1915. I put the fences across the ends, and the gates, and I opened up the gates to the windmill so the stock went in there and across this here said right of way. And in the spring of 1915 the fence that comprised the pasture now, which extended about forty rod from the road south, I took off a wire on the west side of the right of way forty rods along the pasture; and on the east side beginning about thirty rods south of the highway I took a wire from there to the south line, took it off and used it; and in the year of 1921 I took the fence out of the south end of the right of way on twenty-eight. And for

about twenty rods—no—And then in twenty-two I took out more of this fence; and in twenty-three I took out the remainder to this pasture, this forty rod, and this end was cultivated from the time I begin. In nineteen I took the fence out on the Newberg place. That is all on the north quarter. In nineteen I took the fence out on the east side of the right of way from the ditch to the quarter line, and the next year I took it out on the west side of the right of way from the ditch to the quarter line. I farmed across it and as I kept working down this grade and clearing up the ties I burned the ties. I begin farming this land and going a little farther until 1923 when I finally was broke up to the pasture fence, and in the meantime I took the fence out between the pasture, and on the west side from there to the road. I raised corn on this ground, and I raised oats; I raised wheat. I pastured it. I used the ties for fuel. I used the telephone poles for building purposes, and some of them are there yet; some is on the telephone line. I took the wire and used it up on the place. In the year 1925 I made a feed rack and put it on the right of way and we fed our stock there. I first started pasturing the right of way in 1915, part of it is still in pasture. I kept from 25 to 60 head of cattle during all these years and this right of way was in my pasture. The north half of this alleged right of way runs through my pasture. I have pasture land on both sides of the right of way. My stock pastured not only on the right of way but on my pasture on either side. There was a railroad bridge on this right of way in section thirty-three. I tore this bridge out and used it.''

There was evidence tending to corroborate the appellant as to his possession, occupancy, and use of said premises. Appellant also testified that during the time he was so in actual possession of the premises he sold dirt from the right of way to the appellee county in 1925 and that he was paid therefor. The evidence tends to show that appellant's possession and his claim to ownership of the tract were known to the agent of the Railroad Company who was in charge of the railroad property after appellant took possession, and such possession also appears to have been known to the members of the board of supervisors of appellee county.

Against appellant's claim of title by adverse possession it

is contended by appellee that the period of adverse possession could in no event begin to run until the property in question was finally abandoned by the Railroad Company and that this could only be when an order of court was entered authorizing the sale of the property. In other words, it is appellee's contention that the mere nonuser by the Railroad Company was not a legal abandonment thereof until the court had ordered the sale of the property, which was in 1917. It is argued that the Railroad Company might have been resuscitated even after it ceased to operate trains on December 31, 1914, and that until the property was ordered sold by the court there could be no adverse possessory rights acquired by the appellant.

The period of adverse possession begins to run when the party in fact takes possession under a color of title or claim of right. It is the fact of possession under a color of title or claim of right that is the starting point in the process of acquiring title by adverse possession. If appellant had actual possession under a color of title or claim of right on January 1, 1915, it matters not that the railroad was not ordered sold until the year 1917 following.

A more important matter on the question of adverse possession arises on the question of what transpired in the interim after the appellant took possession of the premises. The record tends to show, and the court may well have found therefrom, that while the appellant was in actual possession of said premises he made an offer to the Railroad Company to purchase the said right of way across the land in Section 28 for the sum of $200. This is a circumstance proper to consider on the question of a claim of right.

Again, appellant did not claim to the agent of the Railroad Company that he owned the land, but asserted a qualified claim thereto on the theory that the title to said land would in time revert and that the Railroad Company would lose title thereby. This was before the time had expired under the statute by which, if there was any reversion, the title would have reverted. In other words, the appellant's own statements and claims were that at the end of the statutory period, if the land was not used by the Railroad Company, the title would revert. This contention was quite inconsistent with a claim of right to immediate possession of said premises.

Again, it is a circumstance of some significance that the appellant failed to include said land in listing his property for assessment, but listed each tract owned by him by the fractional acreage which it contained, eliminating the portion of the Governmental subdivision which was taken up by the railroad.

Again, it appears that in 1924 appellant executed a mortgage on a portion of said land in Section 33, expressly "excepting therefrom that part sold to the A. N. & S. Ry. Co. for railroad right of way," and in 1918 executed a mortgage on the tract in Section 28 which also contained the provision: "Except the right of way of the Atlantic Northern & Southern Railway Company." There is evidence tending to show that the possession of the said tract as taken by the appellant was known to a representative of the title-holder, and that permission was given to the appellant to use the right of way in the manner that was done by the appellant. The court found that in taking and retaining actual possession of said premises the appellant acted with the knowledge, consent, and permission of the legal owners of the land in controversy and that the appellant had no right, title, or interest in and to said land in controversy except as a tenant at will and was occupying the same with the consent of the holder of the legal title. This finding of the court has support in the evidence.

Upon the entire record we fail to find that the appellant has established title to the tract of land in controversy, either by record title or by right acquired by adverse possession. It therefore follows that the decree of the district court denying to appellant the right to claim damages from the appellee for the appropriation of the said strip of land in controversy was correct, and said decree is—Affirmed.

MORLING, C. J., and STEVENS, GRIMM, and KINDIG, JJ., concur.

EVANS, J., dissents.

WAGNER, J.—I concur in the affirming opinion in so far as the conveyance known as the "Newburg deed" is concerned,

and dissent in so far as the conveyance known as the "Case deed" is concerned.

I am authorized to say that Justices De Graff and Albert concur in this view.