CITY OF DES MOINES, Appellant,

v.

HOUSBY–MACK, INC. and A
Development Company,
Inc., Appellees.

No. 02–1998.

Supreme Court of Iowa.

July 21, 2004.

Rehearing Denied Oct. 22, 2004.

Susan A. Low, Des Moines, for appellant.

Daniel L. Manning of Connolly, O'Malley, Lillis, Hansen & Olson, L.L.P., Des Moines, for appellees.

PER CURIAM.

The appeal in this spirited condemnation case is unusual in that the parties cannot agree even on a list of issues. The City of Des Moines, the condemning authority, complains that its theories about the ownership of the condemned property were not correctly submitted to the jury. Those interested in the property contend that no theory concerning ownership should have been submitted. We reverse and remand.

Housby–Mack, Inc. (Housby) buys, sells, and repairs cement mixer trucks. Housby owned a facility at 106 Southwest 16th Street in Des Moines, where it had painted trucks since the late 1960s. In January 2001, the City of Des Moines (city) condemned the property for the Martin Luther King Parkway. By that time, Housby had moved its main offices ten miles away to 4747 Northeast 14th Street. A Development Company, Inc. (ADC) had leased the Northeast 14th Street property to Housby since 1976. Housby and ADC are

closely related companies, owned and operated by the same family.

A Housby representative attended a public meeting regarding the roadway construction schedule in November 1995. In a follow-up letter, the city advised Housby that acquisition of the property was scheduled for late 1997 or 1998. In November 1997 the city council formally approved acquisition. Housby solicited the acquisition schedule. After its May 26, 1998 funding authorization, the city mailed official notice on May 29, 1998.

There is conflicting evidence respecting Housby's attachment to the property. Housby insists the property was invaluable to its truck-painting business because it was "grandfathered" under DNR and EPA environmental regulations. The city counters that in early 1998 Housby attempted to sell the property to Meredith Corporation for $340,000. In addition, Housby attempted to sell the property in 1976, 1981, 1983, 1984, and 1986, and Housby leased the property to Robert Daniels of Truck Painters from 1976 until 1990, suggesting it was not essential to Housby's operations.

On August 3, 1998, Housby transferred the property by warranty deed to ADC. ADC in turn leased that property back to Housby as part of a new lease, which also embraced the separate commercial property at Northeast 14th Street that ADC had been leasing to Housby since 1976. From the August 3, 1998 transfer until the condemnation in January 2001, neither Housby nor ADC made any improvements to the property.

The city's appraiser considered the property owner-occupied and did not consider Housby's lease an arm's length transaction. He therefore appraised the property at $350,000 and assigned no value to any supposed leasehold interest. Housby countered that it was entitled to compensation for its leasehold interest based on the "larger parcel" theory.

The Polk County Compensation Commission held a hearing on January 19, 2001, and condemned the property. By this time Housby was the named lessee, while ADC was the titleholder of record. The commission awarded ADC $364,700 for its fee interest and Housby $122,300 for its leasehold interest. The city appealed both awards, and Housby appealed the compensation for its leasehold interest.

The district court allowed the city to present its "sham transaction" theory. The city introduced substantial evidence that Housby and ADC's sale and leaseback arrangements were not arm's length transactions.[1] The jury nonetheless awarded

---

1. Housby and ADC combined their financial statements in 1998, 1999, 2000, and 2001 because, according to their auditor, "[t]he operations of these entities [were] closely related and the entities are owned by substantially the same stockholders and members of the affiliated entities."

The warranty deed and leaseback were certainly not typical business transactions. When Housby deeded the property to ADC, it neglected to update the legal abstract. Moreover, the mortgage with West Bank was never released. The mortgage continued to secure Housby's "present and future loans and advances" as of the condemnation.

ADC never paid Housby for the property, provided any sort of promissory note, or established any terms for repayment. Though the deed records the transfer taking place in August 1998, ADC's books did not record the transfer until the end of 1998.

Jack and Shirley Housby provided West Bank with "continuing guarantees" on May 31, 1998, pledging properties owned by ADC to secure Housby's debts. These continuing guarantees remained in effect through the date of condemnation.

Housby's rent payments were erratic. Housby was often in substantial arrears based on the August 1998 lease. Housby's cash transfers to ADC were called "rent," but were

ADC $350,000 and Housby $330,000—increasing Housby's award for its leasehold interest by more than $200,000. The district court ordered the city to pay attorney fees of $72,720.

On the city's appeal to us, it contends the two closely related corporations should not receive separate compensation for what is the same taking.

■ **I.** Defendants, Housby and ADC, contend a condemnation proceeding is no proper place to resolve ownership disputes. In an appeal under Iowa Code section 6B.18 (2001), the district court acts in an appellate capacity, reviewing only matters that were appropriate for action by the sheriff's jury. Because a sheriff's jury could not resolve property and leasehold issues, the argument goes, the district court jury could not be called upon to consider those matters.

So our first question is whether it was appropriate for the district court to undertake to resolve issues relating to ownership of the property by the two corporations. We think the answer is clearly yes. *See Bourjaily v. Johnson County,* 167 N.W.2d 630, 635 (Iowa 1969) (listing cases in which nondamage issues have been considered on appeal of condemnation award). Interest in the property is a possible issue in many condemnation cases, and we have long recognized the district court can resolve them. *See Montgomery County v. Case,* 212 Iowa 73, 75–77, 232 N.W. 150, 152–53 (1930).

This is the prevailing view in other jurisdictions. Disputes concerning ownership and claims on the property can be resolved as a part of a traditional condemnation proceeding. *See* Annotation, *Necessity of*

*Trial or Proceeding, Separate From Main Condemnation Trial or Proceeding, to Determine Divided Interest in State Condemnation Award,* 94 A.L.R.3d 696, 700–01 (1979). It was appropriate for the city to raise this challenge as a part of the condemnation proceeding.

■ **II.** In many, perhaps most, jurisdictions when the property condemned is subject to a leasehold, the courts apply the "unit rule," sometimes called the "undivided basis rule." 26 Am. Jur. 2d *Eminent Domain* § 260, at 675–76 (1996); 29A C.J.S. *Eminent Domain* § 190, at 456–58 (1992). In those jurisdictions, condemnations implicate a two-step procedure. First, the total compensation for all property rights is determined. In the second step, the court apportions that award among the various interests. 26 Am. Jur. 2d *Eminent Domain* § 258, at 673; 29A C.J.S. *Eminent Domain* § 189, at 455. Our prior cases have rejected the unit rule, holding that the interests of the owner and the lessee should be compensated separately and can exceed the total value of the condemned property. *Fritz v. Iowa State Highway Comm'n,* 270 N.W.2d 835, 843 (Iowa 1978). But that does not mean the city's challenge to the corporation's lease is immaterial.

If the lease was a sham, separate compensation was not appropriate. Courts regularly ignore sham transactions in fixing responsibility in corporate matters. *See, e.g., Tannahill v. Aunspach,* 538 N.W.2d 871, 873 (Iowa Ct.App.1995) ("[a] corporate entity may also be disregarded under exceptional circumstances ... [and] [t]hese circumstances include sham corporations serving no legitimate purpose which are used to perpetrate fraud"); *ac-*

in turn used to discharge Housby's obligations, such as real estate taxes that Housby was supposed to pay under the terms of the August 1998 lease.

An expert witness testified that the sale and leaseback of the property did not reflect a normal business arm's length transaction.

cord *Am. Elec. Power Co. v. United States,* 326 F.3d 737, 741–44 (6th Cir.2003) (under the "sham in substance" doctrine, federal courts refuse to recognize transactions effected only for tax benefits); *131 Main St. Assocs. v. Manko,* 897 F.Supp. 1507, 1518–20 (S.D.N.Y.1995) (same).

The city offered ample evidence to show the lease was a sham because the property is in reality owned and used by the corporations as a single entity. If that evidence is believed, the jury should not have awarded damages for a leasehold interest because only one ownership of the property is involved. This is not a matter, as the corporation argues, of inappropriate piercing of the corporate veil. It is because the taxpayers should not be called upon to compensate for phantom leases. The trial court should have granted the city's request that the jury be instructed on its theory: the lease could be disregarded if the jury establishes it to be a sham. This error requires a reversal and remand for a new trial.

■ **III.** The city also assigns error in the court's refusal to direct a verdict in its favor, again because the lease was a sham that did not merit separate compensation. Though there certainly was strong evidence of a sham, the motion was correctly overruled. The city held the burden of proof to show the sham. Iowa R.App. P. 6.14(6)(*e*). The evidence on the point, though strong, did not establish it as a matter of law. The question whether the lease was a legitimate business arrangement between the corporations must be retried.

■ **IV.** Other assignments challenge instructions and rulings, most of which are not likely to recur on remand. One observation, however, seems appropriate. The city challenges the court's instruction no. 18 relating to the value of the leasehold if the jury finds the lease to be valid. The

challenge is well-taken because the instruction as given could have led the jury to conclude that Housby was entitled to compensation merely because condemnation shortens the duration of the leasehold interest. The measure of damages for the taking of a leasehold interest is well-established. It is the "market value of the unexpired term of the lease over and above the rent stipulated to be paid." *Interstate Fin. Corp. v. Iowa City,* 260 Iowa 270, 274, 149 N.W.2d 308, 311 (1967); *accord Des Moines Wet Wash Laundry v. City of Des Moines,* 197 Iowa 1082, 1085, 198 N.W. 486, 488 (1924).

**V.** The city also challenges the award of attorney fees, a matter we review for abuse of discretion. *Wooldridge v. Cent. United Life Ins. Co.,* 568 N.W.2d 44, 50 (Iowa 1997). We find no abuse on the basis of the record before the trial court. The matter will necessarily be revisited following trial on remand.

**REVERSED AND REMANDED.**

All justices concur except LARSON, J., who takes no part.