HAZEL ATKIN, appellee, v. LEWIS J. WESTFALL, appellant.

No. 48686.

(Reported in 69 N.W.2d 523)

824

Ries & Osmundson, of Iowa City, for appellant.

Messer, Hamilton & Cahill, of Iowa City, for appellee.

GARFIELD, J.—This is an equity action to quiet title to a strip of ground 100 feet wide and nearly 1000 feet long, containing about two acres, abandoned as a railroad right of way in 1938. Following trial the district court quieted title in plaintiff. Defendant has appealed. We affirm the decree.

The strip in controversy extends due east from the Iowa River which flows southeast. Plaintiff, Hazel Atkin, owns a narrow strip about 175 feet wide at its south end extending northwest along the east bank of the river from the west end of the abandoned right of way. The east line of this strip of plaintiff's land, except the south 200 feet thereof, is a road generally parallel to and east of the river. Plaintiff also owns a strip of ground abutting the right of way on the south thereof which is substantially the same size and shape as the right of way. Thus plaintiff's land is about L-shaped with the angle of the L near the west end of the strip in controversy.

Defendant, Lewis J. Westfall, owns blocks E and D in a village called River Junction, along the north side of the right of way. The west line of block E joins the east line of the south 200 feet of the portion of plaintiff's land that extends northwest along the river. Defendant also owns land immediately north of blocks E and D. The west line of defendant's land north of blocks E and D is the aforementioned road which parallels the river. Defendant's east line goes due north from the east end of the abandoned right of way and of plaintiff's land abutting the right of way on the south.

The strip in controversy was deeded by Henry Walker in 1878 to Burlington, Cedar Rapids & Northern Railway "To have, hold and enjoy * * * for any and all uses and purposes in any way connected with the construction, operation, preservation, occupation and improvement of the said Railway." Previously, in 1873, John Porter, Walker's predecessor in title, deeded to the railway blocks D and E which defendant now owns. When Walker deeded to the railway in 1878 he owned the entire 40-acre tract from which the right of way was taken, except blocks D and E. Subsequently, in 1915, this 40-acre tract, subject to the right of way, except 4½ acres south of the strip now owned by plaintiff along the south side of the right of way, came to be owned by E. D. Porter and at his death by his widow, Anna.

February 26, 1943, the executor of Anna Porter's estate conveyed to plaintiff by executor's deed, duly approved by the court, the land heretofore described as owned by plaintiff, together with the land on which the railroad right of way had been located. On the same date, in the same manner, the executor conveyed to defendant blocks D and E and the other land north thereof heretofore described as owned by him. The deed to defendant specifically excepts by description the land conveyed to plaintiff, including the ground previously used for the railroad right of way.

In the meantime, late in 1938, as before indicated, the Rock Island Railroad, successor to the railway to which the right of way was deeded, tore up its track, both rails and ties, and abandoned its line from the town of Lone Tree west to the Iowa River, including the strip in controversy. At Lone Tree, next station to the east, a turntable was installed in 1940 and westbound trains stopped there and turned around rather than to continue west across the Iowa River as they did down to 1938.

The strip in controversy is very rough and cannot be farmed. Its principal value is in the trees on it which could be used for posts. We will later refer to some other facts.

I. It is of course true, as defendant asserts, plaintiff must recover on the strength of her own title, not on the weakness of defendant's. Cheney v. Womans Baptist Foreign Missionary Soc., 243 Iowa 134, 137, 50 N.W.2d 651, 652, and citations; State

v. Nichols, 241 Iowa 952, 970, 44 N.W.2d 49, 59, and citations; Ferrell v. Stinson, 233 Iowa 1331, 1341, 11 N.W.2d 701, 706; 74 C. J. S., Quieting Title, section 17b, pages 41, 42. However, it is sufficient that the interest of a plaintiff in possession is superior to that of defendant. Cheney case, supra, and citations. The above C. J. S. citation thus expresses virtually the same rule: "* * * plaintiff need not show a title good as against the whole world, but only as against defendant."

■ II. The deed from Walker to the railway in 1878 was not a fee simple conveyance. The strip of land was conveyed, as we have said, "To have, hold and enjoy * * * for any and all uses and purposes * * * connected with the construction [and] operation * * * of the said Railway." As we held in Keokuk County v. Reinier, 227 Iowa 499, 503, 288 N.W. 676, 678, where it is conceded there was a similar conveyance, "The grant was limited to a specific purpose, and that purpose having been abandoned, all right, title, and interest of the railroad in and to the land was thereby divested. It is our holding that the deed conveyed nothing greater than a right of way across the 40 acres for the purpose specified in the deed, * * *."

The above language is quoted with approval in Brugman v. Bloomer, 234 Iowa 813, 816, 13 N.W.2d 313, 314. See also 25 Iowa Law Review 685. For other decisions as to the effect of deeds to railroads see annotations 84 A. L. R. 271, 132 A. L. R. 142.

■ III. It is competent for the legislature to say to whom land occupied and used by a railroad shall revert when abandoned. Smith v. Hall (Ladd, J.), 103 Iowa 95, 97, 72 N.W. 427, and citations. Our legislature has spoken in the matter. Section 473.1, Codes, 1950, 1954, provides: "Relocation of railway. Such part of a railway right of way as is wholly abandoned for railway purposes by the relocation of the line of railway, shall revert to the persons who, at the time of the abandonment, are owners of the tract from which such abandoned right of way was taken."

Section 473.2 states: "Failure to operate or construct railway. If a railway, or any part thereof, shall not be used or operated for a period of eight years, or if, its construction having been commenced, work on the same has ceased and has not been in good faith resumed for eight years, the right of way * * *

shall revert to the persons who, at the time of the reversion, are owners of the tract from which such right of way was taken."

One or the other of these sections is applicable here. It would seem 473.1 applies more clearly than 473.2 does. The former section is applicable where part of a right of way is wholly abandoned for railway purposes by relocation of the line. There can be little question the part of the right of way here in controversy was wholly abandoned for railway purposes. As stated, the rails and ties were torn up. In a sense at least the abandonment was accompanied by relocation of the line. See in connection with what is just said Keokuk County v. Reinier, supra, 227 Iowa 499, 288 N.W. 676.

At the time of abandonment in 1938 either E. D. Porter or his surviving spouse, Anna, owned the tract from which the right of way was taken. The right of way therefore reverted to him or her at that time under 473.1. And plaintiff in turn became the owner thereof by the deed from Anna Porter's executor in 1943. Defendant acquired no interest in the right of way under the executor's deed to him, since, as stated, the abandoned right of way was expressly excepted therefrom.

Section 473.2 applies where part of a railway is not used or operated for an 8-year period. The legislature evidently had in mind a distinction between abandoning part of a right of way by relocation of the line and failure to use or operate part of a railway for eight years. In the former event section 473.1 is applicable. In the latter event 473.2 applies.

The distinction between abandonment and nonuser of a property right is that intention to relinquish the right is a necessary element of abandonment. Thus mere nonuser does not of itself amount to abandonment. See Ward v. Incorporated Town of Clover Hills, 240 Iowa 900, 905, 38 N.W.2d 109, 112, and citations; McClain v. Chicago, R. I. & P. R. Co., 90 Iowa 646, 648, 57 N.W. 594, 595; Abens v. Chicago, B. & Q. R. Co., 388 Ill. 261, 57 N.E.2d 883, 887; 1 C. J. S., Abandonment, section 3b(2), page 10; 1 Words and Phrases, Perm. Ed., pages 56 et seq. and pocket supplement.

Apparently we have never before considered the exact distinction between Code sections 473.1 and 473.2 as now worded.

And we find it unnecessary to do so now since we reach the same result under either statute. If we assume, without deciding, section 473.2 rather than 473.1 is applicable, the right of way would revert to the person who, at the time of the reversion (i.e., in 1946, at the end of the 8-year period of nonuser) owned the tract from which such right of way was taken. Plaintiff, not defendant, qualifies as such "person." It is clear blocks D and E, owned by defendant, are no part of the tract from which such right of way was taken.

As previously stated, blocks D and E were conveyed by John Porter to the railway in 1873. However, the right of way was not conveyed until 1878 by Walker, John Porter's successor in title. The tract from which it was taken is land south of blocks D and E. As between plaintiff and defendant, plaintiff has owned this tract since she acquired it by deed from Anna Porter's executor in 1943. Thus plaintiff's title to the disputed strip is superior to defendant's.

Our decision is entirely consistent with Brugman v. Bloomer, supra, 234 Iowa 813, 13 N.W.2d 313, relied on by defendant. There the grantor of the railroad right of way owned the land on both sides thereof. Here the grantor owned the tract that abutted the right of way only on the south. In the cited case, after deeding the right of way, the grantor conveyed the land north of it to one through whom plaintiff claimed and conveyed the land south of the right of way to one through whom defendant claimed. Thus neither Brugman nor Bloomer to the exclusion of the other was the owner of the tract from which the right of way, subsequently abandoned, was taken. Either answered to the description of such owner as much as the other. We held the north half of the abandoned right of way belonged to plaintiff and the south half to defendant. The facts now before us permit no such result here.

■ IV. Defendant has not established his defense of laches and estoppel. The action was not commenced until June 1953, a little more than ten years after Anna Porter's executor conveyed the strip in controversy to plaintiff. However, plaintiff held title to the ground and was entitled to wait until her possession was invaded or her title attacked before taking steps to vindicate her right. Mere lapse of time is not a bar to an action

by the titleholder to quiet title. Fulton v. McCullough, 232 Iowa 1220, 1226, 7 N.W.2d 910, 913, and citations; Wagner v. Wagner, 240 Iowa 1113, 1117, 38 N.W.2d 609, 611; 74 C. J. S., Quieting Title, section 49a.

There is no substantial evidence defendant ever had possession of the disputed strip. He and his son testify he pastured it for a time with milch cows, but it is not shown how long this continued or that plaintiff knew of it. She denies she saw any livestock there. The strip in controversy is well covered with brush and fallen trees and it is difficult to walk through it. Although defendant obtained a quitclaim deed to the abandoned right of way in April 1944 from the trustees of the Rock Island railroad his counsel made it clear in argument to us he claims nothing for this deed.

 Further, delay in bringing action for a period less than the statute of limitations does not amount to laches unless defendant has suffered injury or prejudice thereby, as by making expenditures in reliance on his own right, or unless there is some change in conditions rendering enforcement of plaintiff's right inequitable. The doctrine of laches will be applied only where it would be inequitable to permit recovery or it is clearly demanded in the interest of justice. Each case is governed chiefly by its own circumstances: Jennings v. Schmitz, 237 Iowa 580, 589, 20 N.W.2d 897, 903, and citations; Gord v. Iowana Farms Milk Co., 245 Iowa 1, 19, 60 N.W.2d 820, 830, 831; 44 Am. Jur., Quieting Title, section 65; 74 C. J. S., Quieting Title, section 49b, page 71.

 There is no showing here defendant was injured or prejudiced by plaintiff's delay in bringing action or that conditions have so changed as to render the decree for plaintiff inequitable. Nor does it appear defendant relied to his injury or prejudice upon any representation or conduct of plaintiff. So the defense of equitable estoppel has not been established. McKeon v. City of Council Bluffs, 206 Iowa 556, 561, 221 N.W. 351, 62 A. L. R. 1006; Stookesberry v. Burgher, 220 Iowa 916, 921, 922, 262 N.W. 820; Goodwin Tile & Brick Co. v. DeVries, 234 Iowa 566, 568, 13 N.W.2d 310, 312, 155 A. L. R. 346, 348; 31 C. J. S., Estoppel, section 67a(1), page 254.

We need not discuss the question of the distinction between

laches and equitable estoppel except to say the two doctrines are closely related and it is sometimes said delay in bringing action will not defeat relief unless an estoppel is thereby created in favor of defendant. See Simmons Creek Coal Co. v. Doran, 142 U. S. 417, 448, 12 S. Ct. 239, 250, 35 L. Ed. 1063, 1076; 44 Am. Jur., Quieting Title, section 65, page 51.

V. Defendant argues plaintiff has violated the equity maxims that he who comes into equity must come with clean hands and he who seeks equity must do equity. We think these maxims do not entitle defendant to a reversal. We find no illegal, wrongful or inequitable conduct of plaintiff in the matter with relation to which she seeks relief. (For discussion of the "clean hands" doctrine see Sisson v. Janssen, 244 Iowa 123, 130, 131, 56 N.W.2d 30, 34, 35, and citations.) Nor do we see where plaintiff is unwilling to do what is equitable in the matter.

In support of his contention regarding "clean hands" as well as that of laches and estoppel defendant relies upon the prosecution of an action by plaintiff commenced in April 1943 against Anna Porter's executor and defendant, Westfall, in which plaintiff claimed she purchased from the executor not only the abandoned right of way and the strip south of it that were deeded to her but also blocks D and E, north of the right of way, which blocks were deeded to Westfall. Plaintiff was unsuccessful in that suit. Atkin v. Westfall, 235 Iowa 618, 17 N.W.2d 532.

There is nothing in connection with the cited case that constitutes a defense to the present action. It did not involve the strip here in controversy but only blocks D and E which it is now admitted Westfall owns. It is conceded dismissal of the former action is not res adjudicata here. There is no showing it was not commenced or prosecuted in good faith nor that Mr. Westfall was put to any expense in defending it.

We should mention one other matter upon which defendant relies. Along the east line of defendant's land is a north-and-south street called Walker Street, in the village of River Junction. Sometime prior to May 1949 defendant fenced off and apparently claimed to own all or part of Walker Street adjacent to block D. Defendant admits he fenced off the west half of it. Plaintiff contended this conduct of defendant deprived her of

any public or private way to her land south of the abandoned right of way within the meaning of Code section 471.4(4) which authorizes condemnation of a roadway to isolated lands.

In May 1949 plaintiff filed with the sheriff of Johnson County an application to appoint commissioners to appraise the damages, if any, suffered by defendant from the condemnation by her of a roadway 20 feet wide just west of Walker Street along the east side of block D and the east end of the abandoned right of way. The application recites there is a dispute as to the ownership of the right of way. As a result of plaintiff's application, commissioners were appointed who found defendant entitled to damages of $14 for the taking of the 20-foot strip along Walker Street. So far as shown, plaintiff paid this amount and defendant accepted it.

We find nothing in plaintiff's conduct in this condemnation proceeding in any way inconsistent with plaintiff's present claim except perhaps the statement in the application that ownership of the right of way is in dispute. The making or contents of the application can hardly be taken as evidence defendant owned the right of way or was thereby led to believe he owned it. Nor is it shown defendant placed any such reliance on the condemnation proceeding or was injured or prejudiced by it.

Plaintiff's prosecution of the 1943 action against Anna Porter's executor and this defendant and her application in the condemnation matter in 1949 are insufficient to support the claim plaintiff's hands are not clean or an estoppel should be invoked against her in the present action. Nor do we think commencement of all three proceedings warrants defendant's charge that plaintiff has harassed defendant for about ten years.—Affirmed.

All JUSTICES concur.