CARL CHADEK, appellant, v. CHARLES ALBERHASKY et ux., appellees.

No. 50407.

October 17, 1961.

Clearman, Oehler, Barker & Meeker, of Iowa City, for appellant.

L. G. Klein, of Iowa City, for appellees.

THOMPSON, J.—Plaintiff's petition asking that title to certain real estate be quieted in him was filed on February 21, 1957. Defendant answered in two divisions, the first denying plaintiff's claim of ownership and title, and the second, in the nature of a counterclaim, asking that title be quieted in defendant. Both divisions of the answer asserted adverse possession of the realty in question by the defendant and alleged laches on the part of the plaintiff in asserting his claim. The trial court found both issues with the defendant, holding that he had established title by adverse possession and that the plaintiff was guilty of such laches as to prevent him claiming ownership. From this decree and judgment the plaintiff appeals.

■ I. The property in question is a segment of an abandoned right of way of the Chicago, Rock Island & Pacific Railroad Company. It adjoins real estate which has been owned by the plaintiff since 1945, when he obtained it by a conveyance from the previous owner, and is approximately 400 feet along the line of plaintiff's property by 50 feet measured to the center of the right of way. The right of way is 100 feet wide and the part claimed by the plaintiff is the south one half adjacent to his lot. Where there are different landowners on each side of an abandoned right of way, each is the owner to the center. Brugman v. Bloomer, 234 Iowa 813, 816, 13 N.W.2d 313, 314. The legal description of the tract in dispute is set out in the pleadings, is not an issue in the case, and will not be repeated here. The right of way was originally acquired by a predecessor in interest of the Rock Island Railroad Company by condemnation. These facts are also not controverted.

While there is some showing to the contrary, we think the weight of the evidence is that the right of way was actually abandoned in the late summer or fall of 1939, when the rails were torn up and removed. This was the finding of the trial court and with it we agree. On January 10, 1940, the defendant and his son went to Chicago and for the consideration of $429.10 obtained a quitclaim deed from the railroad company to all of the abandoned right of way. This the defendant says was at the

rate of $35 per acre, and the tract covered by the deed was between 12 and 13 acres in extent. It is evident, therefore, that the disputed segment is something less than one-half acre in extent and is a small fraction of the entire property covered by the deed. The defendant has sold some of the remainder of the tract embraced in the deed, but the property in question here is still unimproved. There is considerable dispute in the facts as to what each of the parties has done in taking possession of the tract in issue here; but as we view the matter it is not necessary to weigh them. It may be said in passing that neither has done a great deal in that respect. Over the years the tract has lain vacant and unimproved and, as far as the record shows, substantially unused. Some of the acts of possession which the defendant claims will be stated in our discussion of the issue of laches.

II. Sections 473.1 and 473.2 of the Code of 1958 are important here. They are set out:

"473.1 Relocation of railway. Such part of a railway right of way as is wholly abandoned for railway purposes by the relocation of the line of railway, shall revert to the persons who, at the time of the abandonment, are owners of the tract from which such abandoned right of way was taken.

"473.2 Failure to operate or construct railway. If a railway, or any part thereof, shall not be used or operated for a period of eight years, or if, its construction having been commenced, work on the same has ceased and has not been in good faith resumed for eight years, the right of way, including the roadbed, shall revert to the persons who, at the time of the reversion, are owners of the tract from which such right of way was taken."

There is contention between the parties as to which applies. The plaintiff claims that his rights accrued under 473.2, while the defendant in argument relies upon 473.1, and calls attention to language in Atkin v. Westfall, 246 Iowa 822, 827, 69 N.W.2d 523, 526. Our final holding there, however, was that it was not necessary to decide the question.

First there is a dispute as to whether either of the reversionary statutes set out above applies under the pleadings

in the case. The defendant thinks they do not. This is based on the fact that the petition to quiet title, in paragraph 2, pleads facts which make a case of ownership in the plaintiff by adverse possession, if established. The prayer contains a request for general equitable relief. In plaintiff's answer to defendant's counterclaim he pleads that he is the owner by reversionary interest following the abandonment of the right of way. There was considerable testimony as to the date of abandonment and it seems to have been considered throughout the trial as an issue. Certainly it was such as a defense to defendant's counterclaim in asking that title be quieted in him; and we think it was fairly before the court at all times. A prayer for general equitable relief is to be liberally construed. The relief granted under it must be such as will not surprise the defendant. He must have had an opportunity to defend against it. Skemp v. Olansky, 249 Iowa 1, 6, 85 N.W.2d 580, 583. The issue was consistent at least with the answer to counterclaim and seems to have been fully understood by all parties during the trial, as shown by the evidence on the point. It was also, under familiar rules, an issue tried out regardless of the pleadings and so a proper ground upon which to grant or withhold relief. Rule 106, Rules of Civil Procedure, says that a variance between the pleadings and proof shall not be deemed material unless it appears that the opposing party was misled to his prejudice in maintaining his cause of action or defense. No such prejudice appears here; on the contrary, the issue of reversion was fully understood and tried. Reed v. Harvey, 253 Iowa 10, 13, 110 N.W.2d 442, 443, 444, and citations.

III. The trial court adjudged the defendant had established his title by adverse possession. The court found that, if reversion under the statute could be considered, section 473.2 rather than 473.1 is applicable. We are again in agreement with the court. The defendant thinks the court was in error in this holding, relying apparently on Atkin v. Westfall, supra. It is true we there said, under the facts of that case, that one of the two sections must apply, and that section 473.1 applied more clearly than section 473.2. We said: "In a sense at least the abandonment was accompanied by a relocation of the line." But

we also said it was not necessary to decide the point, because the same result would be reached under either statute.

But we think that, assuming the dictum in the Atkin case expressed the law as applied to it, there is a clear distinction between the facts there and here. In that case the railroad company had torn up and abandoned its tracks running from the town of Lone Tree west to the Iowa River; its line thereafter ended at Lone Tree. So as we said, "in a sense" there was a relocation of the line. The old location went to the river; the relocation ended at Lone Tree. There was a relocation of one terminus. No such situation appears here. The record shows the entire line was abandoned. There was no possible relocation.

■ With the holding that plaintiff's rights accrued under section 473.2, the basis for any claim of the defendant to title by adverse possession is destroyed. The railroad's rights, under section 473.2, did not terminate for eight years after the abandonment, which we have held, in accord with the findings of the trial court, was during the year, and the latter part of the year, of 1939. Defendant by his deed secured whatever rights the railroad company had; and this included the right of possession for eight years. His possession, if such he had during that time was attributable to the rights granted him by his deed. It was adverse to no one, because no one else had a right of possession. Possession, to be adverse, must be hostile; and when the element of hostility is not shown, possession can never ripen into title. 2 C.J.S., Adverse Possession, section 53, page 568; and the entry on the land must be such as to give rise to a cause of action by the true owner. Burgess v. Leverett and Associates, 252 Iowa 31, 35, 36, 105 N.W.2d 703, 706. The application of these principles here is clear. The defendant by his deed acquired whatever right his grantor, the railroad company, had. Substantially, this right was that of possession until the adjoining landowners acquired the property under section 473.2, after eight years. The plaintiff had no right which he could assert until the expiration of that period. When the defendant took possession, if he did, it was not under such circumstances as gave the plaintiff any right of action. The defendant had the same right the railroad company would have had, but for the

deed to him. He was its grantee and had no more right to claim he was holding adversely to the plaintiff than the railroad company would have had. It would be the grossest injustice to say that the statute of limitations was running against the plaintiff and his predecessor in title during the eight years in which the railroad company, or its grantee, had the right to possession of the abandoned right of way. This is not the law. The statute could not begin to run against the plaintiff until he had some right which he could assert. This was in the summer or early autumn of 1947. His present action was commenced in February of 1957. The ten-year period required by the statute, section 614.1(6), had not then expired, and it interrupted the running of the period of limitations. Burgess v. Leverett and Associates, supra, loc. cit. 252 Iowa 35, 105 N.W.2d 705. Defendant's case based on adverse possession must be held to have failed.

IV. The trial court also held the plaintiff guilty of laches in failing to assert his claim more promptly, and in permitting the defendant to mow weeds, pay taxes and pay special assessments against the disputed area. Each party claims to have mowed the weeds at various times, and the exhibits of tax receipts show for several years they were mowed by the city of Iowa City and the cost assessed against the right-of-way tract. It may be observed in passing that if the evidence of all parties is to be believed this real estate was one of the best mowed parcels of land extant. The life expectancy of its weeds must have been grim, and short. But in this connection, and likewise as to the payment of taxes and special assessments, there is no showing how much of defendant's efforts and money are chargeable to the small part of the entire right of way which plaintiff claims. Defendant testified he mowed the weeds on the entire right of way; and the tax receipts and special assessment vouchers do not separate it so that it can be said any specific amount was paid on the 50- by 400-foot strip in dispute here. For many years the taxes paid on the entire right of way were less than forty dollars, so that the amount chargeable to the less than one-half acre claimed by the plaintiff would apparently be very small. Likewise the special assessments for sewer and paving are not divided so that it can be known with any cer-

tainty·what part was attributable to this·tract. It does not appear there is any paving immediately adjoining the disputed area; any part chargeable to it would be only because it lay within the permissible extent of paving assessments from the paving actually laid. We can only guess what sums the defendant might have paid out for this small tract; and since laches is an affirmative defense and the burden of proving it is upon the party alleging it, we are left without a guide as to what prejudice the defendant may have suffered because of plaintiff's failure to act. It is admitted by the plaintiff that he did not pay any taxes or seek to have the part now claimed by him set off separately. Apparently after the defendant secured his quitclaim deed from the railroad company and recorded it the county auditor entered the entire right of way covered by the deed for taxation in the name of the defendant.

The trial court found laches to exist because the plaintiff knew of defendant's quitclaim deed (although he considered it, rightly, it appears, of no value except as to the right of possession for eight years); because he permitted defendant to pay taxes, and did not ask that the disputed strip be separately entered for taxation; because he discussed with defendant the possibility of purchasing the tract (the plaintiff testified he talked only of buying the north half, and made no offer for the disputed south half); because he did not rebuild the fence which he placed on the line between the north and south halves in 1955, when defendant tore it out; and because defendant filed an affidavit of possession in 1951. Laches is an equitable doctrine and depends on equitable principles. It may be used as an affirmative defense in an action to quiet title; whether it furnished a basis for an affirmative finding of title in defendant on his counterclaim here may be doubted; but as we view the case we do not find it necessary to decide the point.

The doctrine of laches will be applied only where it is necessary to prevent injustice; it will be applied only where it is clearly demanded in the interest of justice. Atkin v. Westfall, supra, loc. cit. 246 Iowa 828, 829, 69 N.W.2d 527; Jennings v. Schmitz, 237 Iowa 580, 589, 20 N.W.2d 897, 903; and citations; Gord v. Iowana Farms Milk Co., 245 Iowa 1, 19, 60 N.W.2d 820,

830, 831; 30 C.J.S., Equity, section 115, page 529. It will be applied when the rights of third parties have intervened or material evidence has been lost while the claimant slept on his rights; but these latter considerations do not appear here, and there is no claim they are present.

Mere delay in enforcing a right is not in itself sufficient to support a finding of laches, when the delay is for a period less than that fixed by the statute of limitations. There must be a showing that the defendant has suffered injury or prejudice thereby or some change in conditions making enforcement of the plaintiff's right inequitable. Atkin v. Westfall, supra, loc. cit. 246 Iowa 829, 69 N.W.2d 527. These principles are thoroughly established by the authorities. Their application to the case before us must be determined.

One material point of the rules concerning the doctrine is that laches must have so operated that it will be impossible to place the parties in statu quo, and the enforcement of the right would work inequity. 30 C. J. S., Equity, section 118, page 540. This element is important here. We have held in a previous division that the time fixed by the statute of limitations, section 614.1(6), had not expired when plaintiff's action was begun. If he had slept on his rights, laches would be available as a defense against their present assertion only if serious injustice would be done and the parties could not be put in statu quo. It must be remembered that under section 473.2, which we have held applicable, plaintiff was the owner and held title to the disputed land after the eight-year period fixed by the statute expired in 1947. The burden was on the defendant to show some reason why plaintiff's right had been lost; to show, under his defense of laches, that the situation had changed because of plaintiff's delay so that the parties could not be put in statu quo and injustice would result.

No improvements have been made on the land. We think the evidence of weed cutting is in such dispute that we must hold the defendant has failed to establish any claim on account of it. There remains the matter of taxes and special assessments. We have pointed out that there is no evidence of what part of these charges which defendant paid is properly chargeable to the small fraction of the entire right of way defendant

claimed to own. In proportion, it would not be large. We see no reason why the parties cannot be put in statu quo by a payment of the part of these sums properly chargeable to the plaintiff's tract, with interest at the legal rate; and we think it would be inequitable to take his land from him when this can be done. Justice does not require such a drastic holding. The defendant can be made whole by reimbursement, which the plaintiff in his testimony offered to do.

The judgment of the trial court is reversed and the cause remanded, with directions to the court to enter its decree quieting title in the plaintiff; to determine the amount of defendant's expenditures for taxes and assessments properly chargeable to the disputed land and to make such amount, with interest, a lien thereon, giving plaintiff sixty days to pay the sum so found. Costs will be taxed four fifths against the defendant and one fifth against the plaintiff.

All JUSTICES concur except BLISS, J., not sitting.