BERNICE PANGBORN JACOBS et al., appellees, v. CARLYLE MILLER et al.; and All Unknown Claimants to the real estate, appellants.

No. 50366.

November 14, 1961.

Holleran, Holleran & Shaw, of Clinton, for appellants (except Sinclair Refining Company).

E. C. Halbach and Lloyd G. Jackson, both of Clinton, for appellees.

THORNTON, J.—This is an action to quiet title to a portion of an abandoned railroad right of way in Maquoketa. Plaintiffs claim title by virtue of reversionary clauses in the deeds given to the railroads and defendants claim as abutting owners and in a separate division ask Adams Street and Third Street as platted be declared to be established as public streets in Maquoketa. The trial court quieted title in plaintiffs and defendants appeal.

It is our duty to review the case de novo. Rule 334, Rules of Civil Procedure; Rand v. Miller, 250 Iowa 699, 95 N.W.2d 916; and Snater v. Walters, 250 Iowa 1189, 98 N.W.2d 302. Plaintiffs must recover on the strength of their own title, not on the weakness of defendants', but need only show title superior to defendants. Atkin v. Westfall, 246 Iowa 822, 825, 826, 69 N.W.2d 523, and citations.

The portion of the right of way claimed by plaintiffs is the former Chicago and North Western Railway Company depot area in Maquoketa. The tract in question abuts the west line of South Main Street. It is 225 feet north and south and extends west 845 feet at the same width, and then extends west 400 feet to the east line of Fifth Street 100 feet wide and contains 5.28 acres more or less.

Pangborn's Subdivision to Maquoketa was originally platted August 20, 1856, by Jason Pangborn, the predecessor in interest of plaintiffs. This subdivision is located in the Northeast Quarter of Section 25-84-2 East of the 5th P.M. From Exhibit "A",

a map representing the City of Maquoketa as it was at the time of trial, and an unnumbered exhibit purporting to show the vacation of a portion of this subdivision, it appears the right of way in question is located in the south portion of this subdivision. On December 6, 1856, said Pangborn deeded to Iowa Central Air Line Railroad Company a strip of land 100 feet wide through the Northeast Quarter of Section 25-84-2 East of the 5th P.M., being 50 feet wide on each side of the center line of said railroad as determined by the engineers of the railroad. This deed contained the following:

"Provided, that in case said Railroad Company do not construct the said Railroad through said tract of land, or shall after construction, permanently abandon the route through said tract of land, the same shall revert to, and become the property of the said grantors, their assigns, forever."

This deed also conveyed five acres to the railroad for depot ground to be selected by the chief engineer of the railroad and provided if the ground was not so used it was to revert to the grantors.

The above deed was stipulated to and it was also stipulated the grantors were the owners of the ground at the time of the conveyance. On April 28, 1870, Pangborn conveyed a similar 100-foot strip through the south half of the same quarter section to the Iowa Midland Railway Company with a similar reverter clause. And on February 29, 1872, Pangborn conveyed to the Iowa Midland Railway Company a strip of land through the south half of the same quarter, beginning on the east section line and extending westerly for 883 feet parallel with the center line "as the same is now constructed" being 100 feet on the north of the center line and 125 feet on the south, and a strip 50 feet on each side of the center line through the balance of the quarter section. This deed contained a similar reverter clause.

It was stipulated the Chicago and North Western Railway Company was the ultimate grantee and assignee of, and held whatever title the prior railroads had and that the Chicago and North Western Railway Company did abandon the said right of way in 1951 or 1952.

216

It was also stipulated that Jason Pangborn was the owner of the land from which the original right of way was deeded.

I. Defendants contend the court erred in holding the abandoned right of way reverted to the original grantors or their heirs or assigns. They contend the right of way reverts to them under chapter 473, Code of Iowa, 1958. They do not specify section 473.1 relating to reversion of a wholly abandoned right of way by the relocation of the line, or section 473.2 relating to reversion for failure to use, operate or construct for a period of eight years. These sections provide for the reversion of the right of way to the persons (section 473.1) who are owners of the tract from which the right of way was taken, either at the time of the abandonment, section 473.1, or at the time of the reversion, section 473.2. It is not necessary to determine which section is applicable. See Chadek v. Alberhasky, 253 Iowa 32, 111 N.W.2d 297.

The parties stipulated defendants were owners of property abutting the right of way prior to and at the time of the abandonment and plaintiffs were the successors in interest of Jason Pangborn and his wife.

We have held chapter 473, Code of Iowa, 1958, applicable to cases where the railroad acquired the land by condemnation or by deed conveying only a right of way for railroad purposes, see Smith v. Hall, 103 Iowa 95, 72 N.W. 427, Atkin v. Westfall, 246 Iowa 822, 69 N.W.2d 523, and Keokuk County v. Reinier, 227 Iowa 499, 288 N.W. 676, and inapplicable to cases where the railroad acquired the right of way in fee simple, see Montgomery County v. Case, 212 Iowa 73, 232 N.W. 150, Des Moines City Ry. Co. v. City of Des Moines, 183 Iowa 1261, 159 N.W. 450, 165 N.W. 398, L. R. A. 1918D 839, and Watkins v. Iowa Cent. Ry. Co., 123 Iowa 390, 98 N.W. 910. See also Comment, 25 Iowa Law Review 685.

In each of the above cases we have given consideration to the wording of the conveyance to determine whether a fee simple title was intended or an easement for right-of-way purposes, and determined the rights of the parties therefrom. We have not allowed the statute to interfere with the right of the parties to contract.

In this case the contest is between plaintiffs, the successors in interest of the original grantors in the deeds to the railroad, and defendants, the present abutting owners who with their predecessors by stipulation have held title since prior to 1900. We have not previously passed on the rights of such parties. Nor do the conveyances here fall into the right-of-way or fee simple cases above referred to. The deeds here granted to the railroads a base or determinable fee reverting automatically upon the happening of the event stated in the deed. This reversionary interest remaining in the grantors is a possibility of reverter. This possibility of reverter is inheritable. Reichard v. Chicago, B. & Q. R. Co., 231 Iowa 563, 1 N.W.2d 721. Therein we also said it was alienable at pages 577 and 582 of 231 Iowa, at pages 730 and 732 of 1 N.W.2d. The Reichard case was before this court on a motion to dismiss on the pleadings and our holding was that the petition averring a deed to the railroad containing a reversionary clause identical with the ones here under consideration and the permanent abandonment of the route stated a good cause of action against the successors in interest of the railroad.

If we follow this reasoning we have the plaintiffs holding a saleable as well as an inheritable right. At the time the first deed was given to the railroad in December of 1856 the only Code provision relating to abandonment, nonuser or reverter of railroad rights of way is found in chapter 46, Taking Private Property for Works of Internal Improvement, section 776, Code of Iowa, 1851, and chapter 55, section 1295, Revision of 1860. It is there provided the former owner may file a petition in district court to have the land restored to him upon refunding the purchase money without interest where the work is not commenced within one year, or where commenced work ceases for two years or after completion use ceases for two years.

The Thirteenth General Assembly enacted sections 1260 and 1261, Code of Iowa, 1873, providing that failure to construct or use for ten years (changed to five years by the Fifteenth General Assembly in 1874) shall be deemed an abandonment, and permitted another railroad to acquire the rights of the former (now sections 471.15, 471.16 and 471.17, Code of Iowa, 1958). In

these enactments the legislature did not undertake to direct the course of the reversion of rights of way. The forerunner of what is now chapter 473 was first enacted by the Eighteenth General Assembly in 1880 and is section 2015, Code of Iowa, 1897. If chapter 473 is construed to be applicable to the deeds and rights acquired or retained by plaintiffs' predecessors before the enactment of any such legislation, doubt is cast on its constitutionality. Biltmore Village v. Royal, Fla., 71 So.2d 727, 41 A. L. R.2d 1380; Waddell v. Board of Directors, 190 Iowa 400, 175 N.W. 65; Watkins v. Iowa Central Ry. Co., 123 Iowa 390, 98 N.W. 910; and annotation, 41 A. L. R.2d 1384.

 Statutes are construed, if fairly possible, so as to avoid doubts as to their constitutionality. Kerr v. Chilton, 249 Iowa 1159, 1166, 91 N.W.2d 579, 584, and citations. We therefore construe chapter 473 as being of prospective application only. This avoids such doubt, and is the general rule for the construction of statutes. A statute will not be construed to be retroactive unless it is the intent of the legislature to make it so and such intent is clearly expressed. Dingman v. City of Council Bluffs, 249 Iowa 1121, 1130, 90 N.W.2d 742, 748. No such intent is expressed in chapter 473, Code of Iowa, 1958.

██ II. Defendants contend the trial court erred in finding the burden was on defendants to prove Third Street and Adams Street should be declared established and in failing to find the evidence did establish such streets and in finding the evidence of platting of Pangborn's Subdivision was in conflict and insufficient to support a finding.

To determine the burden of proof properly placed on defendants in this action it is helpful to briefly outline the case made by the pleadings. First, plaintiffs ask title to the right of way be quieted in them as against defendants, second, defendants ask Third and Adams Streets be declared established, and third, defendants ask title to the right of way be quieted in them in proportion to their abutting holdings as against plaintiffs. As to the first and third the prevailing party need only prove what may be termed "better ownership" than his opponent. As to the streets the burden of proof is on defendants, they may have this relief if proved and not defeat plain-

tiffs' entire claim. Once proved, the burden shifts to plaintiffs if they are to obtain relief as to their entire claim. See, as having some bearing, In re Estate of Sterling, 249 Iowa 1260, 92 N.W.2d 138; Crawford v. Cotter (Iowa), 257 N.W. 356; and Dubuque v. Fischer & Co., 215 Iowa 433, 245 N.W. 758.

The evidence relating to the establishment of Third Street and Adams Street is as follows: On August 30, 1856, the addition was platted by Jason Pangborn. December 6, 1856, the first deed was given to the railroad. May 20, 1857, Jason Pangborn deeded two lots in Block 27 to Adam Gebert and others. There is also a showing of a trustee's deed dated May 12, 1857, to a number of lots in Pangborn's Addition. There is no showing Pangborn had conveyed any of the lots listed. April 2, 1867, Pangborn vacated all of the addition except Blocks 26 and 27, Third Street south of Jefferson Street and another street not material here. This vacation conforms with section 2, chapter 78, of Acts of the Ninth General Assembly, 1862, which provided, "Any part of a town plat * * * may be vacated * * * provided such vacating does not abridge or destroy any of the rights and privileges of any other proprietors in said town plat * * * and provided further that nothing contained in this Act shall authorize the closing or obstructing of any public roads laid out according to law." There is no evidence of any acceptance of the streets by the City of Maquoketa at that time. By acceptance the city would have acquired title to the streets. Section 637, Code of Iowa, 1851 (section 409.13, Code of Iowa, 1958); and Kelroy v. Clear Lake, 232 Iowa 161, 5 N.W.2d 12. The outstanding title in Blocks 26 and 27 would not affect this vacation if the rights of the holders were not abridged. The title represented in the trustee's deed was reacquired by Pangborn by a quitclaim and convey deed in 1885 for a consideration of $400. From that we are inclined to believe those holders had some rights in 1867. However, if they had no rights, the rights of the titleholders in Blocks 26 and 27 were not abridged and the town had not accepted the streets, the vacation was valid, and Jason Pangborn could enclose the streets adjoining the lots vacated. Section 3, chapter 78, Acts of the Ninth General Assembly, section 565, Code of Iowa, 1873. However, the evidence

is in conflict and so much is omitted a finding one way or the other is not warranted.

Defendants rely heavily upon Kelroy v. Clear Lake, 232 Iowa 161, 5 N.W.2d 12, to show the vacation of April 2, 1867, ineffective. In Kelroy the addition under consideration was platted as part of the village plat in 1856. In 1871 the village was incorporated and Ordinance No. 1 passed the same year accepting the streets and alleys within the limits of the town as dedicated by the original owners. The attempted vacation was not filed until 1876. The difference in the facts of the Kelroy case and this one is apparent.

August 29, 1871, the city council by Ordinance No. 53 vacated Adams Street between Main and Third Streets on condition Jason Pangborn would increase Monroe Street to 76 feet in width and extend Second Street to within 105 feet of the north line of the right of way and have the same platted and recorded within 30 days. The conditions were met, whether it was timely or not there is no showing. The city is the only party in a position to complain if it were untimely. It is fair to say the city was more interested in the condition being fulfilled than its timeliness. It is not unfair to defendants to hold this vacation is valid. The city owns the vacated street. Day v. Schroeder & Lindblom, 46 Iowa 546; and Tomlin v. Cedar Rapids & Iowa City Railway & Light Co., 141 Iowa 599, 120 N.W. 93, 22 L. R. A., N. S., 530. And defendants have no right to have that portion of Adams Street established. That the city had the power to vacate the street on condition see City of Marshalltown v. Forney, 61 Iowa 578, 16 N.W. 740.

From the testimony of Mr. Frank S. Reyner, one of the defendants, we are warranted in finding Pangborn's Second Addition was filed October 2, 1871, and that his present Lot 9 in Block 26 in that addition abuts on the right of way and said lot is located at the south end of Second Street, and in 1871 the right of way and Blocks 25 and 26 were in the same location as they now are as shown by Exhibit "A". This map shows what was Third Street is now South Niagara Street (the time of this name change is not shown) and does not extend south of Monroe Street. Lot 11 in Block 25 is located between the

present south end of South Niagara Street and the right of way.

November 25, 1875, the city council by ordinance accepted Third Street and Adams Street together with other streets by reference to the book and page in the recorder's office of both the plat filed in 1856 and the plat filed in 1871. Third Street did not extend south of Monroe Street or into the right-of-way area on the plat in 1871. The evidence is such it does not sustain a finding relative to the acceptance of Third Street across the right of way. All of the evidence of the use made of the railroad yard is as consistent with its use as a railroad, with the acquiescence of the railroad, as it is with the use of the area as Third Street and Adams Street. None of the evidence of use goes back as far as 1871.

All of this evidence is in the face of the stipulations relating to ownership of the right of way. The record contains a number of pages of stipulated matter. First is shown the 1856 deed to the railroad. Then the following sentence, "It was stipulated the grantors were the owners of the ground at the time of the conveyance." Then follows the 1870 and 1872 deeds, a quitclaim deed from the railroad to plaintiffs, stipulations as to rights acquired by the abandoning railroad and of the abandonment, then this sentence, "It was also stipulated that Jason Pangborn was the owner of the land from which the original right of way was deeded." Defendants contend this means the original right-of-way deed in 1856. If it does, we cannot see how their position as to the streets is improved. There is no showing when the right of way was surveyed or the roadbed constructed, nor is there any substantial evidence it was ever changed. In the city ordinance passed in 1871, in Mr. Reyner's abstract (this was not certified to us) and in the 1872 deed to the railroad the references to the right of way are such we are warranted in finding the present location is the same as when first constructed. A proper inference is that the 1872 deed was given to conform to what had been done. If Jason Pangborn owned the land from which the right of way was taken on December 6, 1856, the city had not acquired any rights to the streets over which it passed. They could hardly accept the tendered streets

after they were otherwise disposed of. The parties also stipulated plaintiffs succeeded to whatever rights Jason Pangborn had. There is no showing he ever parted with title to Third or Adams Street other than by the August 30, 1856, plat. All of the evidence on this issue does not sustain a finding that the streets should now be established by us. It is worthy of note the city council has not seen fit to act since the abandonment of the right of way in 1951 or 1952.

It is our holding chapter 473, Code of Iowa, 1958, is of prospective application only and is inapplicable to the deeds in this action. The decree of the trial court quieting title in plaintiffs and denying defendants relief declaring the streets established is correct and is therefore affirmed.—Affirmed.

All Justices concur except Bliss, J., not sitting.