Donald E. McKINLEY, Ollie M. McKinley, Edward D. McKinley, and Glenda M. McKinley, Appellants,

v.

WATERLOO RAILROAD COMPANY, a Wholly-Owned Subsidiary of Illinois Central Gulf Railroad Company, Iowa Natural Heritage Foundation, Iowa Rails To Trails, Inc., Linn County Conservation Board, and Old Interurban Trail, Inc., Appellees.

No. 84–536.

Supreme Court of Iowa.

May 22, 1985.

Edward J. Gallagher, Jr., and Robert C. Griffin of Gallagher, Langlas & Gallagher, P.C., Waterloo, for appellants.

David A. Elderkin of Elderkin, Pirnie, Von Lackum & Elderkin, Cedar Rapids, for appellee conservation board.

Richard C. Garberson of Shuttleworth & Ingersoll, Cedar Rapids, for appellees Waterloo Railroad, Heritage Foundation, Rails to Trails, and Old Interurban Trail.

UHLENHOPP, Justice.

The issues in this appeal are primarily two-fold: whether land condemned for use as a railway returns to the adjacent farm when the railway ceases to be operated for a given period, and whether land conveyed to a railway by deed with a "reverter"

clause returns to the adjacent farm when it ceases to be used for railway purposes.

The Waterloo, Cedar Falls & Northern Railway Company (WCF & N) obtained a one-hundred foot strip of land from Hiawatha to Evansdale, Iowa, by a variety of methods involving condemnations and conveyances. On March 25, 1913, WCF & N acquired a strip through Frank and Kitty Burrell's farm by condemnation. This tract ran diagonally across the southwestern corner of the Burrell farm.

On July 25, 1913, by warranty deed, Henry and Ida Kelty conveyed a strip of land to WCF & N across their farm adjoining the Burrell farm.

The railroad operated for a number of years serving the area. In time, WCF & N sold its assets to the Waterloo Railroad Company, a wholly-owned subsidiary of the Illinois Central Gulf Railroad Company.

In recent years railroads have faced losses and have sought to cut back unprofitable lines. These circumstances led the railroad to seek to abandon its line in question. On March 2, 1976, the railroad filed an application for abandonment with the Interstate Commerce Commission (ICC). On October 13, 1976, an ICC order issued with the finding "that the present and future public convenience and necessity permit abandonment by the Waterloo Railroad Company." An ICC certificate and order of February 7, 1977, authorized abandonment. In addition to permission to abandon, ICC's order stated in pertinent part

> that any responsible state agency and/or local government or other interested responsible organizations be given the opportunity, for a period of 120 days from the date of this Certificate and Order to negotiate the purchase of all or any portion of the rail properties of the line to be abandoned for public use at a purchase price on such terms as the parties may agree as just and reasonable....

The 120-day period passed without a sale, and the time period was allegedly extended through June 12, 1978. No sale was consummated by that date. The railroad subsequently took up its ties, track, and other salvagable material. The strip ceased to be used as a railway and to all intents and purposes was abandoned as such by at least the year 1979 and certainly not later than December 31 of that year.

Defendant Iowa Rails to Trails is a corporation formed to take over abandoned rail roadbeds and to convert the scenic ones into hiking and biking paths. It had been in contact with the Waterloo Railroad Company during this period, seeking to purchase the right of way. On December 30, 1981, defendant Old Interurban Trail ultimately purchased the right of way from the railroad for $525,000 in three counties including the present one. It then conveyed the right of way to defendant Linn County Conservation Board, which at the present time claims the strip involved in this litigation.

Plaintiffs Donald E. and Ollie M. McKinley presently hold title to the farmland on both sides of the rail line in question, and claim title to the strip as a result of the foregoing circumstances. Plaintiffs Edward D. and Glenda M. McKinley are purchasing one of the two parcels from Donald and Ollie, formerly the Burrell farm. Donald and Ollie reside on the former Kelty farm.

On October 5, 1981, the McKinleys commenced the instant action to quiet title to the strip. After trial, the trial court quieted title in defendants. Plaintiffs appealed.

I. *Condemned land.* We will first consider the Burrell condemned strip.

A. Case law is clear that condemnation of land for railroad right of way creates an easement, and once the easement is abandoned the land reverts to the then owner of the servient estate, subject to statutory provisions. *Chadek v. Alberhasky*, 253 Iowa 32, 111 N.W.2d 297 (1961); *Vandewater v. Chicago, R.I. & P. Ry.*, 170 Iowa 687, 153 N.W. 190 (1915); *Hastings v. B. & M. R.R.*, 38 Iowa 316 (1874). Since the adoption of the Iowa Code of 1873, an Iowa statute has provided in one form or another as follows:

If a railway, or any part thereof, shall not be used or operated for a period of eight years, or if, its construction having been commenced, work on the same has ceased and has not been in good faith resumed for eight years, the right of way, including the roadbed, shall revert to the persons who, at the time of the reversion, are owners of the tract from which such right of way was taken.

Iowa Code § 473.2 (1975). This statute governs railroad rights of way acquired by condemnation, since they constitute easements for right of way. When the condemned strip has not been used or operated as a railway for eight years, it reverts to the then owners of the land out of which it was taken. *Turner v. Unknown Claimants*, 207 N.W.2d 544, 545 (Iowa 1973); *see also SMB Investments v. Iowa-Illinois Gas & Electric Co.*, 329 N.W.2d 635, 637 (Iowa 1983).

B. Defendants contend that a federal act, the Railroad Revitalization and Regulatory Reform Act of 1976 (the 4-R Act), preempts Iowa section 473.2. Section 10906 of the 4-R Act requires ICC to make a dual determination. It must determine whether abandonment is proper and, if so, whether the railroad's property is suitable for other public use. If the property is so usable, ICC may order the property to be "sold, leased, exchanged, or otherwise disposed of" on conditions directed by ICC, including a prohibition on other disposal by the railroad "for a period of not more than 180 days...."

Defendants contend that by virtue of section 10906 ICC can determine the railroad right of way may be sold to a public agency and can thus preserve the easement free of section 473.2. This contention involves interpretation of section 10906 and also constitutional implications.

■ As to interpretation, section 10906 unquestionably permits a sale of the strip by the railroad. Such easements are commercial in nature and are thus alienable. 5 Restatement, Property § 491, Comment b (1936). While this is true, the interest of the railroad was acquired when the prede-

cessor to section 473.2 of the Iowa Code was in effect, and is measured by that statute. At all times the railroad's interest has been subject to "reversion" upon nonuse for railroad purposes for a specified period of time. We are unable to find anything in section 10906 of the 4-R Act which purports to transform that interest of the railroad into a greater interest or to permit the railroad, by alienation, to elevate that interest to an easement free of the Iowa abandonment statute. We think section 10906 simply means that ICC can prohibit the railroad for 180 days from disposing for private uses *whatever interest the railroad has in the right of way under the property law of the state where the land lies.* The United States Supreme Court stated in *Hayfield N.R.R. v. Chicago & N.W. Transportation Co.*, 467 U.S. ——, 104 S.Ct. 2610, 81 L.Ed.2d 527 (1984), "[N]othing in the [4-R Act] expressly refers to federal preemption with respect to the disposition of abandoned rail property." *Id.* 467 U.S. at ——, 104 S.Ct. at 2617, 81 L.Ed.2d at 536. We hold that the 4-R Act does not preempt Iowa title law.

■ As to constitutional implications, when the right of way was condemned across the Burrell farm the interest the railroad obtained was subject to reversion under the predecessor to section 473.2, and the Burrells received compensation on that basis. The owners of the farm have never been compensated for an easement for purposes other than railroad uses, subject to reversion on nonuse for railroad purposes. While we do not decide the constitutional problem that defendants' contention raises because of our conclusion on interpretation, we note that a real question exists. *See Ruckelshaus v. Monsanto Co.*, 467 U.S. ——, 104 S.Ct. 2862, 81 L.Ed.2d 815 (1984); *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 101 S.Ct. 446, 66 L.Ed.2d 358 (1980). We hold specifically that section 10906 does not preempt section 473.2 of the Iowa Code.

C. Defendants also contend that the easement was not abandoned; it merely changed from an easement for railroad

purposes, a form of public transportation, to other forms of public transportation such as hiking and biking. They rely on *State v. Washington Wildlife Preservation, Inc. v. State,* 329 N.W.2d 543 (Minn. 1983), *cert. denied,* —— U.S. ——, 103 S.Ct. 3540, 77 L.Ed.2d 1390 (1983). The court was there concerned with fourteen deeds executed in 1884 and 1885. The court sought to determine the nature of the interest conveyed, and concluded that if an easement was conveyed it was not merely for railroad purposes. The court stated:

> Use of the right-of-way as a recreational trail is consistent with the purpose for which the easement was originally acquired, public travel, and it imposes no additional burden on the servient estates.

*Id.* at 545.

Additionally, the court held that the easement was not abandoned since merely a change of transportation mode was involved:

> It has long been held that the holder of an easement is not limited to the particular method of use in vogue when the easement was acquired, and that other methods of use in aid of the *general purpose* for which the easement was acquired are permissible.

*Id.* at 546.

■ *Washington Wildlife* differs substantially from the case at bar. In this case the easement was for railroad purposes. It was created by condemnation, a statutory creature, and not by deed, which is in essence a contract. Being a creature of statute, the interest created is controlled by statute, including section 2015 of the Code of 1897, now section 473.2 of the 1975 Code, relating to reversion for nonuser for *railroad* purposes. In contrast, the Minnesota Supreme Court specifically stated that none of the deeds were limited to railroad uses:

> Significantly, however, none of the deeds expressly limit the easement to railroad purposes, provide that the interest conveyed terminates if use for railroad purposes ceases, or provide that the easement would exist only for so long as

the right-of-way was used for railroad purposes. While the grantors were undoubtedly aware that a railroad would be constructed on the land, none of the deeds limit the use to railroad purposes.

*Id.* at 546. We hold that *Washington Wildfile* is not applicable here. *See Chadek v. Alberhasky,* 253 Iowa 32, 111 N.W.2d 297 (1961); *Schnabel v. County of DuPage,* 101 Ill.App. 553, 428 N.E.2d 671 (1981); *Pollnow v. State Dep't of Natural Resources,* 88 Wis.2d 350, 276 N.W.2d 738 (1979).

D. Defendants also contend that the Iowa Stale Uses and Reversions Act terminated the reversion. Iowa Code § 614.24 (1975). No verified claim was filed under that act. Section 614.24 provides:

> No action based upon any claim arising or existing by reason of the provisions of any *deed* or *conveyance* or *contract* or *will* reserving or providing for any *reversion, reverted interests* or *use restrictions* in and to the land therein described shall be maintained either at law or in equity in any court to recover real estate in this state or to recover or establish any interest therein or claim thereto, legal or equitable, against the holder of the record title to such real estate in possession after twenty-one years from the recording of such deed of conveyance or contract or after twenty-one years from the admission of said will to probate unless the claimant shall, by himself, or by his attorney or agent, or if he is a minor or under legal disability, by his guardian, trustee, or either parent or next friend, shall file a verified claim with the recorder of the county wherein said real estate is located within said twenty-one year period. In the event said deed was recorded or will was admitted to probate more than twenty years prior to July 4, 1965, then said claim may be filed on or before one year after July 4, 1965. Such claims shall set forth the nature thereof, also the time and manner in which such interest was acquired. For the purposes of this section, the claimant shall be any person or

persons claiming any interest in and to said land or in and to such *reversion, reverter interest* or *use restriction,* whether the same is a present interest or an interest which would come into existence if the happening or contingency provided in said deed or will were to happen at once. Said claimant further shall include any member of a class of persons entitled to or claiming such rights or interests.

(Emphasis added.)

██ We observe that the statute only addresses claims arising from a deed, conveyance, contract, or will, whereas the McKinley's claim arises pursuant to statute. Moreover, the reversion for nonuser provided by section 473.2 of the Code does not involve the policy of the stale uses and reversions act. A railroad right of way is open and obvious. The reverter statute in section 473.2 has also been open and obvious since 1873. Section 473.2 itself charges all persons with notice that an unused railroad right of way may be subject to reversion after eight years. That section of the Iowa Code is entirely different from a "reverter" clause tucked away in a deed, conveyance, contract, or will. We hold that section 614.24 does not apply to reverters under section 473.2.

██ We note that section 614.24 was amended in the Code of 1981. The abandonment here took place no later than December 31, 1979, whereas the amendment to section 614.24 became effective July 1, 1980. Similarly, section 473.2 was amended and moved to section 327G.77 in the Code of 1981. The abandonment occurred before this change also was made. These amendments do not apply here. Legislative enactments, including these, normally operate prospectively. *City of Monticello v. Adams,* 200 N.W.2d 522 (Iowa 1971); *see Byker v. Rice,* 360 N.W.2d 572 (Iowa Ct. App.1984). Moreover, we hold that subsequent amendments do not alter our interpretation of sections 614.24 and 473.2 before the changes were made.

██ As a result of these conclusions, the condemned strip will go to the persons who are the owners of the Burrell farm on January 1, 1988, unless the use of the strip for railroad purposes resumes before then. In the meantime the Linn County Conservation Board has the use and possession of the strip; the railroad could convey the remainder of its eight years to the extent that no greater burden is placed on the servient estate. *Chadek v. Alberhasky,* 253 Iowa 32, 111 N.W.2d 297 (1961).

II. *Conveyed land.* We next consider the strip the Keltys conveyed by deed to the railroad. That deed stated:

"KNOW ALL MEN BY THESE PRESENTS: That Henry H. Kelty and wife Ida Kelty of Benton County and State of Iowa in consideration of the sum of One and no/100 dollars and other valuable consideration in hand paid by Waterloo, Cedar Falls & Northern Railway Company of Black Hawk County and State of Iowa do hereby SELL AND CONVEY unto the said Waterloo, Cedar Falls & Northern Ry. Co. the following described premises situated in Benton County, Iowa. All that part of the southeast quarter of the southeast quarter of section twenty (20) twp. eighty-six (86) north Range Nine (9) west of the fifth P.M. lying within fifty (50) feet on each side of the center line of the main track of the Waterloo, Cedar Falls & Northern Railway as the same is now located. *Should the land hereby conveyed cease to be used for railway purposes the same shall revert back to the farm from which it was taken.* TO HAVE AND TO HOLD the premises above described, with the appurtenances unto the said Waterloo, Cedar Falls & Northern Railway Company and their successors and assigns forever, and we do hereby covenant with the said Waterloo, Cedar Falls & Northern Railway Company that we are lawfully seized of said premises; that they are free from encumbrance that we have good right and lawful authority to sell and convey the same we do hereby covenant to WARRANT AND DEFEND the title to said real estate and appurtenances thereto belonging against the

lawful claims of all persons whomsoever; and Ida Kelty hereby relinquishes all her right of dower, and all her right under the Homestead Laws of the State of Iowa, in and to described premises.

(Emphasis added.)

A. The crucial question is whether this deed conveyed to the railroad a fee or an easement. The granting clause in the first sentence speaks in the language of a fee; it does not grant a right of way but rather, the Keltys "SELL AND CONVEY" "the following described premises", describing it as 50 feet on each side of the center line of the railroad. Under the statutes in effect at the time, and later, this language conveyed a fee. Iowa Code §§ 2914, 2958 (1897); Iowa Code §§ 557.3, 558.19 (1975).

 The deed then states that should the "land" hereby "conveyed" cease to be used for railway purposes, it shall "revert" to the farm from which it was taken. As a matter of property law, this was not a "reverter" clause, as the land would not necessarily go to the grantor or his heirs but to the subsequent owners of the farm out of which it was carved. Restatement, Property § 154(1) and Comment b (1936). The deed conveyed a fee subject to a purported executory limitation. Restatement § 25(1)(a) and Comment f, § 46 and Comment k. We say "purported" because of the perpetuities problem to which we will subsequently advert.

The deed then contains the habendum clause: the railroad and its successors and assigns to hold the described "premises" forever.

The contents of the granting and habendum clauses in a deed are vital in drawing the distinction between a grant of a fee and an easement. Our most recent decision on the fee-easement distinction, although itself involving an easement, reinforces our conclusion that the present deed conveyed a fee subject to an executory limitation. *Hawk v. Rice,* 325 N.W.2d 97 (Iowa 1982). That opinion sets out the two clauses involved:

The granting clause provided that the grantor did

"grant, sell and convey to the said Toledo and Northwestern Railway, its successors and assigns, *for the purpose of constructing a Railroad thereon, and for all uses and purposes connected with the construction and use of said Railroad,* the right of way for the said Railroad over and through the [described tract]...."

In its habendum clause, the deed recited that the railroad was

"To Have, Hold and Enjoy The land above described, with the appurtenances, unto the said Toledo and Northwestern Railway, and its assigns forever, *for any and all uses and purposes in any way connected with the construction, preservation, occupation and enjoyment of the said Railroad. Provided, however,* that if the said Railroad shall not be constructed over and through the said premises before June 1st 1882 or if said Toledo and Northwestern Railway, or its assigns, shall at any time hereafter cease permanently to use said Road so to be constructed, and the same shall be abandoned, or the route thereof changed, so as not to be continued over the said premises, then and in that case said land hereby granted shall revert to the said grantor his heirs or assigns."

*Id.* at 98 (emphasis added). After citing numerous decisions involving railroad easements, we distinguished the cases involving fees and particularly the *Reichard* case:

The court of appeals relied principally on *Reichard v. Chicago, Burlington & Quincy Railroad,* 231 Iowa 563, 1 N.W.2d 721 (1942), for a contrary result. That case is distinguishable, however, on two bases. First, the parties in *Reichard* agreed the conveyance was of a determinable fee so the nature of the conveyance was not an issue in the case. Second, unlike the deed in the present case and other easement cases, the *Reichard* deed did not contain language characterizing the conveyance as one of right of way, or for construction and operation of a railroad or for railroad purposes. Although the deed did de-

scribe the conveyance as "for Depot Grounds," the reversionary clause was based solely on failure to construct the railroad line, or after construction, permanent abandonment of the route. Thus it would not be unreasonable to conclude that the deed conveyed a fee interest in the railroad route, subject to the possibility of reverter. A similarity between *Reichard* and the present case is that the deed in this case also contained a reversionary clause. This, however, has nothing to do in either case with defining the interest that is subject to reverter.

The present case is also distinguishable from four other cases in which an interest conveyed to a railroad has been called either a determinable fee or a fee on a condition subsequent. *See Chicago & Northwestern Railway v. Osage*, 176 N.W.2d 788 (Iowa 1970); *Jacobs v. Miller*, 253 Iowa 213, 111 N.W.2d 673 (1961); *Connolly v. Des Moines & Central Iowa Railway*, 246 Iowa 874, 68 N.W.2d 320 (1955); *Des Moines City Railway v. Des Moines*, 183 Iowa 1261, 159 N.W. 450 (1916). *No limitation on the conveyance in these cases was identified as being contained in either the granting clause or habendum clause. Each appears to have concerned a limitation either in a separate instrument or reversionary clause.* None involved an easement issue.

*Id.* at 99–100 (emphasis added).

We hold under the language of the Keltys' granting and habendum clauses, and our pronouncements in *Hawk*, that the instant deed conveyed to the railroad a fee subject to an executory limitation.

B. We previously quoted the stale uses and reversion act in section 614.24 of the Code of 1975. The act expressly applies to "any deed". The present deed was in existence in 1965, and the act required claims such as those of the McKinleys to be filed by July 5, 1966. McKinleys stipulated that they did not file their claim. The Keltys' deed did not create an affirmative easement but contained the very kind of clause the act was intended to terminate if

claims were not filed. *Amana Society v. Colony Inn, Inc.*, 315 N.W.2d 101 (Iowa 1982); *Chicago & N.W. Ry. v. City of Osage*, 176 N.W.2d 788, 792 (Iowa 1970) (quoting Marshall, *Iowa Title Opinions and Standards*, 12.3 (E–1) at 70 (Supp. 1966)). We hold that the reversion clause in the Keltys' deed ceased to be of any effect as of July 5, 1966.

C. We have already quoted section 473.2 of the Code of 1975, relating to nonuser for eight years. This statute applies only to easements and land acquired by condemnation. *Jacobs v. Miller*, 253 Iowa 213, 216, 111 N.W.2d 673, 675; *Montgomery County v. Case*, 212 Iowa 73, 232 N.W. 150 (1930). It is thus inapplicable here, where the conveyance was of a fee with an executory limitation.

The parties have argued the applicability of the rule against perpetuities in section 558.68 of the Iowa Code. We find no necessity to address this issue as we have concluded that the clause in the Kelty deed ceased to be effective in 1966 by virtue of section 614.24 of the Code.

We thus hold that the strip which was condemned will belong to the persons who own the adjacent land on January 1, 1988, if its nonuser for railroad purposes continues; in the interim, the easement is owned by the Linn County Conservation Board. We further hold that the "reverter" clause in the Kelty deed terminated in 1966 by operation of law and that such strip is owned by the Linn County Conservation Board in fee simple.

We assess the costs half to plaintiffs and half to defendants.

AFFIRMED IN PART, REVERSED IN PART.

All Justices concur except CARTER, J., who takes no part.