Burke, J.
 

 The parties herein have gone to great lengths to obtain judicial resolution of their controversy and, after the first attempt resulted in failure because of their inability to have the order of the Acting Trial Judge signed
 
 (O & W Lines
 
 v.
 
 St.
 
 
 *20
 

 John,
 
 53 Misc 2d 792 [Sullivan County Ct., 1962]), this present action was commenced by submission to the Appellate Division on an agreed statement of facts pursuant to CPLR 3222.
 

 For the sum of $1,700 Frederick M. St. John and Pluma E., his wife, conveyed
 
 3%
 
 acres of land in what was then the Hamlet of Monticello to the Monticello and Port Jervis Rail Road Company pursuant to an indenture executed on September 18, 1869. This indenture states in pertinant part:
 
 ‘ ‘
 
 With the appurtenances and all the estate title and interest of the parties of the first part therein to have and to hold the same unto the said party of the second part its successors and assigns to the same extent and effects as if title to the same had been acquired under and pursuant to the provisions of the act entitled an act to authorize the formation of Rail Road Corporations and to regulate the same passed April 2nd, 1850 and the acts amendatory there of and the said party of the first part doth hereby covenant and agree
 
 *
 
 * * that at the time of the delivery hereof the said party of the first part is the lawful owner of the premises in fee simple absolute and that he will warrant and defend the above granted premises in the quiet and peaceable possession of the said party of the second part its successors and assigns forever”.
 

 Expressly incorporated by reference into this indenture is the Railroad Act of 1850, which provides that, following an appraisal and judgment of condemnation, “ the [railroad] company shall be entitled to enter upon, take possession of, and use the said land for the purposes of its incorporation, during the continuance of its corporate existence, by virtue of this or any other act; and all persons who have been made parties to the proceedings shall be divested and barred of all right, estate and interest in such real estate, during the corporate existence of the company as aforesaid.” (L. 1850, ch. 140, § 18.) This particular section, authorizing railroad companies to acquire land by condemnation for any and all recognized purposes, has been authoritatively construed as giving the railroad not a fee title, but merely an easement.
 
 (Roby
 
 v.
 
 New York Cent. & H. R. R. R. Co.,
 
 142 N. Y. 176 [1894];
 
 Hudson & Manhattan R. R. Co.
 
 v.
 
 Wendel,
 
 193 N. Y. 166 [1908];
 
 Matter of City of New York,
 
 307 N. Y. 447, 453 [1954].) However, similarly incorporated into the indenture are any amendments to the Railroad Act, one of which
 
 *21
 
 is directly applicable here:
 
 “
 
 [A] 11 lands acquired by any railroad company by appraisal, for passenger and freight depots, shall be held by such company
 
 in fee
 
 ’ ’. (L. 1854, ch. 282, § 17; italics supplied.) Thus we reach the pivotal point of this dispute; the plaintiff railroad contends that it owns the parcel in fee, and can, therefore, dispose of it accordingly; the defendants, successors to the estate of Frederick M. St. John, the original grantor, argue that the railroad company’s predecessor in title had only obtained an easement, and that, when its corporate existence terminated, the parcel remained, as it always had, property of the defendants or their predecessors in fee.
 

 It is conceded that, if the railroad company had acquired the property in question solely for the purpose of a right of way, it would have acquired only an easemént in the property. Similarly, if it had acquired the property solely for the purpose of a depot, it would have acquired a fee as to the entire parcel. It is also stipulated in the submission that
 
 “
 
 an undetermined portion thereof was used for depot, freight house and other railroad purposes, and an undetermined portion was used for right of way purposes.” Naturally in attempting to ascertain the purpose of acquisition a reasonable inference can be drawn from the use to which the acquired parcel was put subsequent to the transfer. (CPLB, 3222, subd. [b], par. 4;
 
 O & W Lines
 
 v.
 
 St. John,
 
 26 A D 2d 145 [3d Dept., 1966].) Since the parcel was used for both depot and right of way purposes it can be reasonably inferred that it had been acquired for this dual purpose, i.e., not solely for a right of way nor solely for a depot (the actual structure), but rather for both. And this conclusion is amply supported by the diagram of the parcel submitted by the
 
 amici curiae
 
 and appended to this opinion (Appendix A). By the very shape of the property one can reasonably conclude that it had not been acquired solely for right of way purposes, and that the Monticello and Port Jervis Bail Boad Company had intended at the time of acquisition to construct a passenger and/or freight depot on the premises.
 

 Indeed, this is the conclusion reached by Judge Scbadt in the first abortive litigation undertaken by the parties in attempting to resolve this dispute (53 Misc 2d 792). If, then, it is reasonable to conclude that the parcel in question was acquired for both right of way and depot purposes (and it would be difficult
 
 *22
 
 to defend any other contention), how is the parcel to be properly disposed of? Judge Schadt resolved the dispute by finding an easement in that portion of the parcel used for right of way purposes, and a fee in that portion of the parcel used for depot purposes. While such a solution may not be unreasonable, we take a different view of the situation, and approve the result reached by the Third Judicial Department. When a parcel is acquired for use as a right of way, there is no doubt as to the purpose of acquisition and only an easement is obtained by the grantee. However, as to property acquired for use as a depot, we construe the Legislature’s intent in the 1854 amendment to the Railroad Act as did the Appellate Division, meaning not merely the building which is labelled a “ depot,” but also the adjacent sidings as appurténances for access. “ ‘ Depot ’ would, of course, include such tracks, platforms, etc., as are normally incidental to a railroad depot (see
 
 Crouch
 
 v.
 
 State of New York,
 
 218 App. Div. 356).” (26 A D 2d, supra, p. 147.) One does not normally construct a depot unless he has available in close proximity thereto a right of way which will give freight and passenger trains access to the terminal. Accordingly, while “ right of way” does not obviously include “depot,” in our opinion “ depot,” as a generic term, may and most often would include a limited “ right of way.” As the Appellate Division properly reasoned, from the geographical shape of the parcel (see Appendix A) one can only conclude that the Monticello and Port Jervis Rail Road Company fully intended to construct a depot thereon. This, then, is the primary intent or purpose óf the acquisition. It only follows that as an essential element of the terminus complex it intended to lay steel rails so that trains would have access to the depot. Thus, the parcel was acquired not to be used as a right of way, but rather to be used as a “ depot ’ ’ in the fullest understanding of that term. Therefore, from this construction of the statutes in question and without any evidence to the contrary it appears that the entire 3%-acre parcel was acquired for the purpose of building thereon a freight and/or passenger depot (which necessarily included adjacent rights of way), and that consequently under the 1854 amendment to the Railroad Act the plaintiff’s predecessor in title, the Monticello and Port Jervis Rail Road Company, acquired the entire parcel in fee.
 

 
 *23
 
 Furthermore, this is consistent with the language used in the indenture itself which on its face seems to transfer a fee, with the retention of certain rights as to the flowing of water over the property. And even the explicit reference to these retained water rights supports this conclusion, since one would think that, if the intent of the parties was to limit the interest in the parcel which the railroad was acquiring, the fact that only an easement was being granted would be similarly spelled out. As Judge Schadt pointed out in the earlier suit, the law does not favor forfeitures, and conditions and conditional limitations are strictly construed against the grantor. As a result, it would be straining the indenture to find an easement where it only refers to the ownership of the parcel as being in
 
 “
 
 fee simple absolute. ’ ’ It must further be remembered that, while the 1854 amendment is referred to in the indenture, the property was conveyed voluntarily through a sale to the railroad by the grantor. This is just another circumstance which militates against reducing the estate acquired by the grantee railroad in 1869.
 

 Accordingly, because of the clear wording of the indenture (which appears to grant a fee), because of the 1854 amendment which grants a railroad a fee in all property taken for purposes of a freight or passenger depot, because of the peculiar shape of the parcel in question and because of the express retention by the grantor of certain rights in the property, it was reasonable for the Appellate Division to conclude from the submitted facts that, with the exception of the water rights retained, the grantee had acquired the entire 3%-acre parcel in fee, and that its successor in interest, the plaintiff herein, has complete ownership of the entire parcel.
 

 Since such an inference is reasonable, based on the agreed statement of facts, and authorized under OPLE 3222 (subd. [b], par. 4), the order of the Appellate Division should be affirmed, without costs. Questions which would arise if a different result were reached need not be considered.
 

 Chief Judge Fuld and Judges Van Voorhis, Scileppi, Bergan, Keating and Breitel concur.
 

 Order affirmed.
 

 
 *24
 
 APPENDIX e A.