MACERICH REAL ESTATE COMPANY and Midwest Centers, Appellees,

v.

The CITY OF AMES, Iowa, Appellant.

No. 87-1754.

Supreme Court of Iowa.

Dec. 21, 1988.

John R. Klaus, City Atty., Ames, for appellant.

David Wiggins and Edward N. McConnell of LaMarca, Marcucci, Wiggins & Anderson, P.C., West Des Moines, for appellees.

Considered by LARSON, P.J., and SCHULTZ, CARTER, SNELL and ANDREASEN, JJ.

LARSON, Justice.

This is an action to quiet title to a strip of abandoned railroad land in Story County. The contestants are, on one hand, two adjoining landowners, Macerich Real Estate Company and Midwest Centers, to whom we will refer collectively as Macerich. These parties claim title to the former railroad property by reason of Iowa Code sections 327G.76 and .77 (1985). The City of Ames, on the other hand, claims title through a quitclaim deed from the railroad. The district court quieted title in the adjoining landowners, and the city appealed. We affirm.

The issues are (1) the nature of the original deeds to the railroad—an easement or a fee; (2) whether, if a railroad's interest was an easement, it was "extinguished" by Iowa Code section 327G.76 (and thus subject to being claimed by the adjoining landowners under section 327G.77); and (3) whether application of section 327G.77 would be unconstitutional.

### I. *The Original Deeds.*

█ A railroad was last operated on this land by the Chicago–Northwestern Railway Company, which was a successor to the Iowa & Minnesota Railway Company, the original grantee. Two deeds to Iowa–Minnesota were involved, and we will refer to them as the Black deed and the Hoggatt deed. The Black deed provided:

In consideration of the sum of $10.00, the receipt of which is hereby acknowledged, Isaac Black and E.M. Black, his wife, hereby sell and convey to the Iowa & Minnesota Railway Company the right-of-way 100 feet in width for a single or double railroad track, as the same is located through the following lands, to-wit:

The Northwest Quarter of the Northwest Quarter of Section 11, Township 83, Range 24, said lands being situated in the County of Story, State of Iowa and we, the said Isaac Black and E.M. Black, his wife, warrant the title against all persons whomsoever.

In witness whereof, we have hereunto signed our names this 21st day of August, 1866.

The Hoggatt deed provided:

File for record March 20, 1874, at 2 o'clock p.m., Iowa & Minnesota Railway Company in consideration of the sum of $10.00, the receipt which is hereby acknowledged L.P. Hoggatt and Abigal Hoggatt, his wife, hereby sell and convey to the Iowa & Minnesota Railway Company the right-of-way 100 feet in width for a single or double railroad track as

the same is located through the following lands, to-wit:

34 acres in the Northeast Quarter of Section 10, Township 83, Range 24, and said lands being situated in the County of Story and State of Iowa, and the said L.P. Hoggatt and Abigal Hoggatt, his wife, warrant the title against all persons whomsoever.

In witness whereof, we have hereunto signed our names this 21st day of August, 1866.

Effective January 9, 1985, the railroad was authorized by the Interstate Commerce Commission to cease providing rail services across this land. On December 9, 1985, the railroad quitclaimed its interests to the city.

The city now claims that the Black and Hoggatt deeds conveyed a fee to the railroad and therefore a fee is what the city got in its quitclaim deed from the railroad in 1985. Macerich counters that, under established Iowa case law, the original deeds conveyed only an easement for railroad purposes and that the easement was extinguished when the railroad abandoned its use prior to the 1985 quitclaim deed. Macerich claims the city essentially got nothing under its quitclaim deed, and the district court agreed.

In *Hawk v. Rice*, 325 N.W.2d 97, 99 (Iowa 1982), we considered the effect of a deed to a railroad which used similar language. In that case, the granting clause of the deed provided that the grantor did

grant, sell and convey to the said Toledo and Northwestern Railway, its successors and assigns, for the purpose of constructing a Railroad thereon, and for all uses and purposes connected with the construction and use of said Railroad, the right-of-way for the said Railroad over and through the [land described].

In the habendum clause, the deed in *Hawk* provided that the railroad was

To Have, Hold and Enjoy The land above described, with the appurtenances, unto the said Toledo and Northwestern Railway, and its assigns forever, for any and all uses and purposes in any way connected with the construction, preserva-

tion, occupation and enjoyment of the said Railroad. *Provided, however,* that if the said Railroad shall not be constructed over and through the said premises before June 1, 1882, or if said Toledo and Northwestern Railway or its assigns, shall at any time hereafter cease permanently to use said Road so to be constructed, and the same shall be abandoned, or the route thereof changed, so as not to be continued over the said premises, then and in that case said land hereby granted shall revert to the said grantor his heirs or assigns.

Hawk argued that the deed conveyed only an easement; Rice contended it was a determinable fee. We noted that a long line of Iowa cases had held that similar language conveys only an easement for railroad purposes, not a fee. 325 N.W.2d at 99.

In doing so, we stated that

[e]very conveyance of real estate passes all of the grantor's interest unless a contrary intent reasonably can be inferred from the language used.... The grantor's intent is controlling, and it is ascertained by applying general contract principles....

In attempting to discern the grantor's interest, we relied primarily on the words of the deed. We found the granting clause expressly described the conveyance as a right-of-way for construction and operation of a railroad. *Id.* In the present case, the deed similarly provided that it was for a "right-of-way ... for a single or double railroad track."

Despite apparent disagreement among other jurisdictions as to the effect of a deed for "right-of-way" purposes, *e.g.*, annotation, *Deed to Railroad—Fee or Easement*, 6 A.L.R.3d 977 (1966), our cases have not equivocated in the face of such language. *See, e.g., Chicago & N.W. Ry. v. Sioux City Stockyards Co.*, 176 Iowa 659, 668, 158 N.W. 769, 772 (1916) ("[A] grant or gift of ground for right of way is presumed to be of an easement therein only."); *Brown v. Young*, 69 Iowa 625, 626, 29 N.W. 941, 941 (1886) ("A mere right-of-way over land

is, we believe, always regarded as an easement.").

We conclude that the deeds in this case conveyed to the railroad only an easement for railroad purposes. That brings us to the second issue.

## II. *Extinguishment of the Easement.*

■ Having decided that the railroad did not obtain a fee simple title under its original deeds, the question remains what interest, if any, it conveyed to the city under its quitclaim deed. This turns on the interpretation of Iowa Code section 327G.76, which deals with the extinguishment and divestment of such interests. It provides:

> Railroad property rights which are *extinguished* upon cessation of service by the railroad *divest* when the railway finance authority or the railroad, having obtained authority to abandon the rail line, removes the track materials to the right-of-way. If the railway finance authority does not acquire the line and the railway company does not remove the track materials, the property rights which are *extinguished* upon cessation of service by the railroad *divest* one year after the railway obtains the final authorization necessary from the proper authority to remove the track materials.

(Emphasis added.)

Our interpretation of section 327G.76 is critical to both parties, because the application of section 327G.77, providing for passage of title to adjoining owners such as Macerich, applies only "[i]f a railroad easement is extinguished under section 327G.76." Macerich says this easement was extinguished under that section; the city argues it was not. The key phrase in section 327G.76 is this: "Railroad property rights which are *extinguished* upon cessation service by the railroad *divest* when the railway finance authority or the railroad ... removes the track materials to the right-of-way." (Emphasis added.)

The key question is when "extinguishment" and "divestment" occur, and what difference there is, if any, between those terms. The city would have us read the statute as only applying to those cases where "property rights are [already] extinguished upon cessation of service by the railroad." Macerich, on the other hand, would have us read it as stating, "railroad property rights[,] which are extinguished upon cessation of service by the railroad[,] divest...."

Both readings would require us to read something into the statute. Both readings are plausible. In *State v. Lohr,* 266 N.W. 2d 1, 4 (Iowa 1978), we said that punctuation is seldom highly persuasive in determining legislative intent. On the other hand, we may not add words to a statute under the guise of judicial construction. *State v. Hesford,* 242 N.W.2d 256, 258 (Iowa 1976).

The parties' arguments may be boiled down to this: The city claims that section 327G.76 does not itself effect an extinguishment; according to its argument, the statute applies only to "rights which [have already been] extinguished." We do not subscribe to this argument. It is clear from a reading of Iowa Code section 327G.77 that section 327G.76 does in fact effect an extinguishment. The first sentence of section 327G.77 provides: "If a railroad easement is extinguished *under section 327G.76,* the property shall pass to the owners of the adjacent property...."

We read section 327G.76 to provide for extinguishment upon cessation of service. We are led to that understanding not only by the language of section 327G.77, just quoted, but also by the fact that the forerunner to the present section 327G.76 did provide for rights to be extinguished upon abandonment of the railroad. *See* Iowa Code § 327G.76 (1983).

This reading is also consistent with the general rule. *See, e.g.,* 25 Am.Jur.2d *Easements and Licenses* § 101, at 506 (1966) (when use authorized by easement extinguished, easement extinguished). *See generally Chicago & N.W. Ry. v. Sioux City Stockyards Co.,* 176 Iowa at 668, 158 N.W. at 772; *Brown v. Young,* 69 Iowa at 626, 29 N.W. at 941; *Johnson v. Burlington N.,* 294 N.W.2d 63, 67 (Iowa App.1980). We conclude that the actual cessation of ser-

vice by the railroad in this case, which occurred prior to 1985, effected the "extinguishment" of the railroad's easement.

■ That is not the end of the inquiry, however, because section 327G.76 also provides that the railroad's rights "divest" when the railway finance authority, or the railroad, removes the track materials. If the track materials are not removed, the rights divest one year after the railway obtains final authorization necessary to remove the track materials. *Id.*

The city argues that, because it received its quitclaim deed from the railroad during the window of time after the cessation of railroad service and before the rights "divested" under section 327G.76, the railroad still had something to convey at that time. Macerich, on the other hand, argues that, at the time the quitclaim deed was given to the city in December 1985, the railroad's rights had already been extinguished by the cessation of its services under the general common law and the specific provisions of Iowa Code section 327G.76. Macerich argues that, even though the rights had not "divested" at that time, the railroad still had nothing to convey.

We agree with Macerich that the term "divest" only applies to the loss of the railroad's right to remove the track material; it does not affect the easement which has already been extinguished. This is consistent with the legislative history of section 327G.76 which, according to the explanatory comment to the bill, was aimed at preventing the vesting of the "adjoining property owners' reversionary rights ... until the track materials are removed by the railroad."

We conclude that, at the time the quitclaim deed was given by the railroad to the city, the railroad had no rights other than to enter the property for removal of the track material and that it did not convey any rights in its easement. The city does not contend, nor does it appear in the evidence, that there was any intent on the part of the city to continue a railroad operation.

We conclude that the railroad's easement was extinguished by section 327G.76, and that, under the provisions of Iowa Code section 327G.77, "the property ... pass[ed] to the owners of the adjacent property at the time of abandonment." In this case, that is Macerich.

### III. *The Constitutional Issue.*

■ This brings us to the constitutional issue. The city argues that, if Iowa Code section 327G.77 is applied, it unconstitutionally deprives the city of its property rights. The district court held that the city had no standing to challenge the constitutionality of a statute, and we agree.

Standing does not depend solely on the merits of a claim but rather on whether the wrong alleged produced a legally recognizable harm. *Iowa Civil Liberties Union v. Critelli,* 244 N.W.2d 564, 567 (1976). As the district court pointed out, the city derived its claim to the property solely under the quitclaim deed from the railroad. As previously discussed, there was no interest to be conveyed by the quitclaim deed, and the city therefore lacks any standing to object to the claims by Macerich on constitutional grounds. In order to recognize such a claim, the city would have to be among the class of persons harmed by the alleged unconstitutional deprivation. In this case, the city can make no such claims. *See Iowa Civil Liberties Union,* 244 N.W. 2d at 567. Accordingly, we reject the constitutional argument.

Finding no grounds for reversal in this case, we affirm.

AFFIRMED.