NOTELZAH, INC., Appellee,

v.

Delmon DESTIVAL, et al., Appellants.

No. 91–407.

Supreme Court of Iowa.

Sept. 23, 1992.

Larry F. Woods, Oelwein, for appellants.

Franklin W. Sauer, Independence, for appellee.

Considered by HARRIS, P.J., and CARTER, LAVORATO, NEUMAN, and SNELL, JJ.

HARRIS, Justice.

Plaintiff purchased abandoned right of way from a railroad. Defendants, who are adjacent landowners, appeal from a decree quieting title in the plaintiff. We affirm in part, reverse in part, and remand.

The disputed land is in Hazleton, Iowa. It was purchased by the Burlington, Cedar Rapids and Minnesota Railroad (BCRMR) in 1872. A number of deeds, some of them labeled "deed for right of way" and some labeled "warranty deed," were involved. The property was later acquired by the Chicago, Rock Island and Pacific Railroad Co. (CRIPR), which operated the railroad line until the interstate commerce commission granted permission to abandon it September 13, 1976. CRIPR then sold the property to plaintiff Notelzah, Inc. for a price exceeding $25,000. The property was transferred to plaintiff by quitclaim deed.

Plaintiff filed this quiet title action in five divisions, each division addressed to a separate parcel. This appeal is by defendants who own land adjacent to the disputed parcels. Other defendants not appealing included unknown heirs, assigns and successors of the original grantors (none of whom appeared or answered), as well as defendants who filed disclaimers or who submitted to default judgments. Defendants remaining in the action filed a counterclaim seeking a declaration that their interests in the land adjacent to their own were paramount to Notelzah's. The trial court quieted title to all tracts in plaintiff.

■ Because this action was tried in equity, review is de novo. *Weigel v. Weigel,* 467 N.W.2d 277, 279 (Iowa 1991). Weight is given to the trial court's findings of fact, especially when the credibility of witnesses is at issue. *Id.*

I. Only one disputed parcel had been acquired by the railroad by way of warranty deed. It conveyed a five-acre tract, referred to by the parties as parcel C, to BCRMR:

for the purpose of right of way and Depot grounds for said Railway Company and if not used and occupied for such purposes within one year from date here-

of then the said premises to revert to these grantors.

The only party contesting plaintiff's ownership of parcel C is Hank Stofer who owns land adjoining it. He argues that the fee was subject to a possibility of reverter under the language of the deed. Stofer claims a depot was never built on the property, and thinks, because of this failure, the land reverted to the original grantors, after which the railroad had only an easement.

■ Stofer is driven to this assertion because his claim as an adjacent owner is based on Iowa Code sections 473.1 and 473.2 (1975). These provisions are inapplicable when a railroad has acquired a fee simple interest in the land. *McKinley v. Waterloo R.R.*, 368 N.W.2d 131, 138 (Iowa 1985); *Turner v. Unknown Claimants of a Strip of Land*, 207 N.W.2d 544, 545 (Iowa 1973) (quoting *Jacobs v. Miller*, 253 Iowa 213, 216, 111 N.W.2d 673, 675 (1961)).

Although plaintiff suggests several flaws in Stofer's claim, it is necessary and therefore appropriate for us to consider only one. No factual basis for a reversion is shown.

Stofer relies on the parties' stipulation: The only depot was constructed in the area designated as blocks 6 and 7. The area in blocks 8 and 9 was used for a cattle yard, receiving pens and coal distribution area....

Parcel C lies within blocks 8 and 9, to the south of blocks 6 and 7. Stofer argues that, because a "depot" was not constructed on the five-acre tract described in the warranty deed, the land reverted to the original sellers in 1873, destroying the railroad's fee.

The cases are far from unanimous in defining a railroad "depot." Although a number of cases include the broader dictionary definition of either a passenger or freight station or a place for the deposit of goods, a majority of the courts hold that the term suggests only a passenger or freight station. *See* 74 C.J.S. *Railroads* § 1(f) (1951); 65 Am.Jur.2d *Railroads* § 229 (1972). An early Iowa case suggests that we subscribe to the majority defini-

tion. *Mahaska County R.R. v. Des Moines Valley R.R.*, 28 Iowa 437, 448–49 (1870).

■ Even under the narrow definition, however, the condition for reverter was satisfied under the stipulated facts. When the depot was built its operation and definition encompassed its surrounding grounds, including the five-acre tract adjoining Stofer's land. This is because a depot includes more than the building so labeled; it includes as well the adjacent yards and sittings normally incident to a depot. *O & W Lines, Inc. v. St. John*, 228 N.E.2d 370, 372, 20 N.Y.2d 17, 22, 281 N.Y.S.2d 302, 306 (1967); *United States v. Spatuzza*, 331 F.2d 214, 216 (7th Cir.1964). It is not important that the passenger station was built on a block adjacent to parcel C. The cattle yards, receiving pens and a coal yard made parcel C a part of the depot operation and therefore a part of the depot.

The trial court was correct in quieting title to parcel C.

II. The railroad did not acquire the remaining parcels by warranty deeds. The various deeds relating to these parcels contained similar language that, after acknowledging receipt of the agreed considerations, recited that the grantors "sell and convey [to the railroad] for purposes of constructing a railroad thereon, and for all uses and purposes connected with the construction and use of said Railroad, the right of way for the said Railroad over and through the following described [strip of property]." The instruments also contain language providing a reversion to the heirs or assigns of the grantors in the event of the railroad's abandonment.

■ Under our holdings in *Macerich Real Estate Co. v. City of Ames*, 433 N.W.2d 726, 729 (Iowa 1988), and *Hawk v. Rice*, 325 N.W.2d 97, 100 (Iowa 1982), the railroad possessed only an easement, not a fee in the parcels other than parcel C. Because the railroad's interest in the parcels (other than parcel C) was only an easement, the plaintiff, as the railroad's vendee, acquired no interest in these tracts after (as we later explain) the easement expired. The dispute does not end here, however, because of defendants' counterclaim. De-

fendants were obliged to establish their interests in the disputed tracts because, it is stipulated, none of them acquired title to the abandoned tracks when they took title to their adjacent properties. In other words this dispute is between parties, none of whom can claim an easement in or title to the abandoned railroad property, who each claim to have a greater interest in the land than the other.

III. Through the years, Iowa has adopted different statutes dealing with conflicting rights in abandoned railroad property. We have long recognized it to be the legislature's prerogative to sort through and fix those rights. *Smith v. Hall,* 103 Iowa 95, 97, 72 N.W. 427, 428 (1897) ("It was competent for the legislature to say to whom the land occupied and used by a railroad company should revert when abandoned.").

Although the parties dispute the point, we think it is clear that the controlling abandonment statute is the one in effect at the time of abandonment. We applied this rule in *Macerich,* 433 N.W.2d at 727–28. *See also Byker v. Rice,* 360 N.W.2d 572, 574–75 (Iowa App.1984).

IV. The following sections of the 1975 Iowa Code [1] controlled the reversion of railroad right of ways:

**473.1 Relocation of railway.** Such part of a railway right of way as is wholly abandoned for railroad purposes by the relocation of the line of railway, shall revert to the persons who, at the time of the abandonment, are owners of the tract from which such abandoned right of way was taken.

**473.2 Failure to operate or construct railway.** If a railway, or any part thereof, shall not be used or operated for a period of eight years, or if, its construction having been commenced, work on the same has ceased and has not in good faith resumed for eight years, the right of way, including the roadbed, shall revert to the persons who, at the time of the reversion, are owners of the tract from which such right of way was taken.

Defendants cannot rely on section 473.1 because we have held it applies only to situations in which abandonment has occurred by way of relocation of the line. *Atkin v. Westfall,* 246 Iowa 822, 827, 69 N.W.2d 523, 526 (1955).

V. Defendants however can, if they establish a factual background, rely on section 473.2. On our de novo review we have no difficulty finding that the railroad abandoned the property in 1976. The interstate commerce commission entered its order authorizing abandonment in September of that year and credible testimony, which we accept as true, shows that no trains ran thereafter. By the time this action was brought, and defendants' counterclaims filed, the railroad had not operated for more than the eight years specified in Iowa Code section 473.2. Accordingly the abandoned right of way in the parcels (other than parcel C) reverted to the "persons who, at the time of the reversion, [were] owners of the tract from which such right of way was taken." None of the defendants involved here owned land on both sides of the railroad line or are otherwise entitled to more than one-half of it. Thus, although some contend for more, the adjacent landowners are entitled only to one-half of the portion of the parcel abutting their land. On remand the trial court should enter an order accordingly.

Because what we have said controls disposition of the appeal, we have not discussed a number of contentions urged in the briefs. Tax costs two-thirds to plaintiff and one-third to defendant Stofer.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS.

---

1. Since amended and renumbered. *See* Iowa Code § 327G.77 (1990).