BURLINGTON NORTHERN RAILROAD COMPANY, Appellee,

v.

Peter KMEZICH; Wayne Schoening; Kristine Schoening; Arthur Sieck, Jr.; and Diane Sieck, Appellants.

No. 94–1678.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 12, 1994.

Decided Feb. 27, 1995.

Scott H. Peters, Council Bluffs, IA, argued, for appellant.

Rodney M. Confer, Lincoln, NE, argued (Cheryl R. Zwart, on the brief), for appellee.

Before RICHARD S. ARNOLD, Chief Judge, FAGG, Circuit Judge, and WILSON,* District Judge.

RICHARD S. ARNOLD, Chief Judge.

The defendants, Peter Kmezich, Wayne Schoening, Kristine Schoening, Arthur Sieck, Jr., and Diane Sieck (the landowners), appeal from findings of fact and conclusions of law entered against them and in favor of the plaintiff, Burlington Northern Railroad Company. The issue in this case is whether Iowa law extinguishes a railroad's property interest in a right-of-way when a railroad "abandons" a railroad line for interstate-commerce purposes pursuant to the Interstate Commerce Act, but continues to use the line for other railroad purposes. The District

Court[1] held that no such extinguishment occurs. For the reasons set forth below, we affirm.

## I.

The property at issue in this case is a rail line stretching between Pacific Junction in Mills County, Iowa, and Council Bluffs in Pottawattamie County, Iowa. The landowners own the land adjacent to the railroad right-of-way along this line. Burlington Northern, or, more precisely, its predecessors, obtained its interest in the right-of-way through various, and sometimes duplicative, grants, reservations, or condemnation proceedings during the 19th Century.[2] It is undisputed that Burlington Northern at one time or another obtained at least an easement in the property for the purpose of operating a railroad.

In 1985, Burlington Northern determined that this fourteen-mile-long line was not producing revenue and began the process of abandoning the line for interstate-commerce purposes. When the Interstate Commerce Commission grants an abandonment, it relieves a railroad of the duty to file tariffs with respect to the line and substantially lessens the cost of maintenance on the line. The I.C.C. granted Burlington Northern's abandonment request on April 29, 1985, and the abandonment became effective on June 2, 1985.

Burlington Northern continued to use the right-of-way for various purposes following the I.C.C. abandonment. The line provided

---

* The Hon. William R. Wilson, Jr., United States District Judge for the Eastern District of Arkansas, sitting by designation.

1. The Hon. Charles R. Wolle, Chief Judge, United States District Court for the Southern District of Iowa.

2. This suit actually involves seven different parcels of land:

The southeast quarter of the southwest quarter of Section 8, Township 73 North, Range 43 West, Mills County, Iowa.
The northeast quarter of the northwest quarter of Section 17, Township 73 North, Range 43 West, Mills County, Iowa.
The southwest quarter west of the county road, Section 17, Township 73 North, Range 43 West, Mills County, Iowa.

The northeast quarter of the northwest quarter of Section 20, Township 73 North, Range 43 West, Mills County, Iowa.
The southwest quarter east and west of the railroad and the southwest quarter of the northwest quarter, Section 32, Township 73 North, Range 43 West, Mills County, Iowa.
The northeast quarter and southeast quarter of the northwest quarter of Section 20, Township 74 North, Range 43 West, Pottawattamie County, Iowa.
The northeast quarter of the southwest quarter west of the railroad, Section 32, Township 74 North, Range 43 West, Pottawattamie County, Iowa.

a convenient route between Council Bluffs and Pacific Junction for track inspectors. Maintenance crews used the line in order to move various types of equipment to other lines for the purpose of carrying out maintenance duties. Empty coal and grain cars have been stored on both ends of the line. Moreover, Burlington Northern has continued to maintain, and pay property taxes on, the line.

These uses continued until a Burlington Northern track inspector discovered "No Trespassing" signs and missing rails during a routine trip over the line on July 2, 1991. Wayne and Kristine Schoening had placed the signs and removed 18 rails from the right-of-way adjacent to their property. Peter Kmezich removed approximately one-quarter of a mile of rail from the line adjacent to his property. The remaining landowners, the Siecks, while not actually destroying the line, have asserted their intention to remove rails, and all of the landowners claim the property as their own.

Upon learning that the landowners were claiming ownership of the property and removing rails, Burlington Northern brought this suit. Initially, a preliminary injunction was issued[3] to prevent further use of the property by any party. Burlington Northern then sought a permanent injunction, to quiet title in its name, and damages, arguing that abandonment for I.C.C. purposes does not extinguish its interests under Iowa law, or, alternatively, that if Iowa law does extinguish its interests, that law violates both the Takings Clause and the Contracts Clause of the United States Constitution.

Following a hearing, the District Court held that Burlington Northern's interests were not extinguished under Iowa law, thus avoiding the constitutional issue. The landowners were permanently enjoined from attempting to exclude Burlington Northern from using the line, and title to the property was confirmed in Burlington Northern. The District Court ordered Peter Kmezich to return rails and other property to the right-of-way and to pay $3,960.00 in damages. The

Schoenings, who had disposed of the rails they removed, were ordered to pay $3,960.00 in damages.

## II.

We review the District Court's interpretation of Iowa law *de novo*. *Salve Regina College v. Russell,* 499 U.S. 225, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991). When applying a state's statute, we are bound to accept the construction placed on that statute by the state's highest court. *R.A.V. v. City of Saint Paul,* —— U.S. ——, ——, 112 S.Ct. 2538, 2542, 120 L.Ed.2d 305 (1992); *Medical Protective Co. v. Bell,* 912 F.2d 244, 245 (8th Cir.1990), *cert. denied,* 498 U.S. 1090, 111 S.Ct. 970, 112 L.Ed.2d 1056 (1991).

The dispositive issue in this case is whether a railroad's easement is extinguished pursuant to Section 327G.76 of the Iowa Code when the railroad abandons its line under the Interstate Commerce Act. Section 327G.76 of the Iowa Code states that

> Railroad property rights which are extinguished upon cessation of service by the railroad divest when the railway finance authority or the railroad, having obtained authority to abandon the rail line, removes the track materials from the right-of-way. If the railway finance authority does not acquire the line and the railway company does not remove the track materials, the property rights which are extinguished upon cessation of service by the railroad divest one year after the railway obtains the final authorization necessary from the proper authority to remove the track materials.

The landowners argue that the phrase "which are extinguished upon cessation of service" simply describes the types of "railroad property rights" which are affected by the statute. The phrases following the word "divest" each time it appears define when those rights are extinguished: when track materials are removed or one year after authorization to remove track materials is obtained from the I.C.C. The District Court,

---

**3.** The Hon. Donald E. O'Brien, Senior United States District Judge for the Southern District of

Iowa, granted the injunction.

conversely, read the phrase "cessation of service" as defining when "railroad property rights" are extinguished: when the railroad actually ceases using the line for any business purpose.

The Supreme Court of Iowa, fortunately, has definitively construed Section 327G.76. In *Macerich Real Estate Co. v. City of Ames,* 433 N.W.2d 726 (Iowa 1988), the Chicago & Northwestern Railway Co. was granted an I.C.C. abandonment of a right-of-way on January 9, 1985. Subsequently, on December 9, 1985, the railroad quitclaimed its interest in the land to the City of Ames, Iowa. Macerich Real Estate Co. and Midwest Centers, the owners of the adjacent property, argued that the city received nothing because the railroad's interest, an easement, had been extinguished by Section 327G.76 prior to the issuance of the quitclaim deed.

After holding that Section 327G.76 does, indeed, extinguish interests, the Iowa Court addressed the question of when that extinguishment occurs. According to the Supreme Court of Iowa, Section 327G.76 should be read to "provide for extinguishment upon cessation of service." *Macerich Real Estate Co.,* 433 N.W.2d at 729. This interpretation was influenced both by the forerunner to the current statute, which provided for extinguishment upon actual abandonment, and the "general rule" that when a use authorized by an easement ends, the easement is extinguished. *Ibid.* (citing 25 Am.Jur.2d *Easements and Licenses* § 101, at 506 (1966)). Applying this construction to the case before it, the Iowa Court held that the "actual cessation of service by the railroad ..., *which occurred prior to 1985,* effected the 'extinguishment' of the railroad's interest." *Id.* 433 N.W.2d at 729–30 (emphasis added). Notably, it was the actual cessation of service "prior to 1985," not the I.C.C. abandonment in January of 1985, which determined the date of extinguishment.

The City argued that the quitclaim deed was effective to transfer the property because the deed was received before the railroad's rights were divested under the statute. Under the City's interpretation, Section 327G.76 did not "divest" the railroad of any rights, including its easement, until either

the track materials were removed from the right-of-way or one year had passed since the railway had been granted authority to remove the track materials. The one-year window was still open when the City obtained the deed. The Supreme Court of Iowa rejected this construction, holding that "the term 'divest' only applies to the loss of the railroad's right to remove the track material; it does not affect the easement...." *Id.* 433 N.W.2d at 730. Thus, the term "divest" has nothing to do with when a railroad's interest in the land expires. It merely allows a period of time during which the railroad may enter upon the land and remove materials which it left behind.

We think this holding requires us to affirm the District Court's construction of Section 327G.76 and reject the landowners'. Actual cessation of service extinguishes interests under the statute. I.C.C. abandonment is not the triggering event. Thus, so long as Burlington Northern continues to use the right-of-way for some legitimate, railroad purpose, its interest in the land is preserved. It is true that in *Macerich Real Estate Co.,* the railroad had obtained an I.C.C. abandonment. The Supreme Court of Iowa, however, emphasized that cessation of service, not I.C.C. abandonment, extinguishes a railroad's interest. This interpretation is made more compelling by the fact that, according to the Iowa Court, Section 327G.76 extinguished the railroad's interest prior to the I.C.C. abandonment proceeding. If the extinguishment of a railroad's interest can precede I.C.C. abandonment, then surely its interests can also survive I.C.C. abandonment.

■ It remains to determine whether the District Court's finding that Burlington Northern has not ceased service on the line is correct. We will not reverse the District Court unless this finding of fact is clearly erroneous. Fed.R.Civ.P. 52(a). We cannot say that it is. Indeed, the landowners do not strenuously so argue. They contend that the line was not used much, only 12 times in 10 years, but reducing use is not the same as ceasing use. Also, the landowners argue that the I.C.C.'s finding that the line was fully abandoned and no longer in service establishes cessation of service under Iowa

law. The landowners misunderstand the I.C.C.'s function. The I.C.C. is concerned only with whether a line is abandoned for interstate-commerce purposes, which indeed this line is. That says nothing about whether a line is actually abandoned for all railroad purposes. *Cf. Vieux v. East Bay Regional Park Dist.,* 906 F.2d 1330, 1339 (9th Cir.), *cert. denied,* 498 U.S. 967, 111 S.Ct. 430, 112 L.Ed.2d 414 (1990). The District Court had before it ample evidence that Burlington Northern continued to use the line. Thus, the finding that there was no cessation of service under Section 327G.76 is not clearly erroneous.

The judgment is affirmed.