# United States Court of Appeals for the Federal Circuit

---

**MARK R. RASMUSON, BRENDA S. RASMUSON,
IVA MILLER, MARTIN MEIER, DAVID A. JUST,
CAROLYN J. JUST, DELTON DIXON, PLEASANT
VALLEY GOLF CLUB, INC., ROBERT AASTRUP,
DONALD TAYLOR, BETTY TAYLOR, DOROTHY M.
JOHNSON, REX ENGEBRETSON, JURGENS
FARMS CORP., DEAN JURGENS, SCHUMACHER
FARMS, INC., THOMAS FLOY, RICHARD STILLE,
CURTIS STILLE, PAMELA STILLE,**
*Plaintiffs-Appellees*

**v.**

**UNITED STATES,**
*Defendant-Appellant*

---

2014-5089

---

Appeal from the United States Court of Federal Claims in No. 1:09-CV-00158-NBF, Senior Judge Nancy B. Firestone.

-----------------------------------------------------------------

**WILMA N. ADKINS, HOWARD BURROWS,
GONNER FARM, LLC, JAN ROSE FARM, INC.,
JAMES A. HARP, CLAYTON LINDSTROM AND
GAYLE LINDSTROM, HUSBAND AND WIFE,
BOYCE L. LANGE, TRUSTEE, FRANK MARTIN,**

**DAVID CHONGO AND CHRISTINE CHONGO, HUSBAND AND WIFE, RONALD PINYAN, TODD MAURICE JOHNSON, CURTIS MENNENGA, TRUSTEE, HOPE CHURCH OF THE NAZARENE, RODNEY KNOX AND PAMELA KNOX, HUSBAND AND WIFE, RONALD GAULKE AND KAREN GAULKE, HUSBAND AND WIFE, SHARON BURT, THOMAS BLAKE, MERRILL GOERING AND LINDA GOERING, HUSBAND AND WIFE, JAMES A. BRADY AND PATRICIA A. BRADY, HUSBAND AND WIFE, DAVID F. JOHNSON, MELLISSA S. CHAPPELLE, DALE BARRETT AND KATHLEEN BARRETT, HUSBAND AND WIFE, RONNIE L. SMITH AND DEBORAH A. SMITH, HUSBAND AND WIFE, DAVID E. BROONER AND CYNTHIA L. BROONER, HUSBAND AND WIFE, DOUG SCHMELING, JOHN T. CURPHEY, FOR THEMSELVES AND AS REPRESENTATIVES OF A CLASS OF SIMILAR PERSONS,**
*Plaintiffs-Appellees*

**v.**

**UNITED STATES,**
*Defendant-Appellant*

————————————

2014-5092

————————————

Appeal from the United States Court of Federal Claims in No. 1:09-CV-00503-NBF, Senior Judge Nancy B. Firestone.

--------------------------------------------------------------

**STEVE JENKINS, DONALD BURG,**
*Plaintiffs-Appellees*

**v.**

**UNITED STATES,**
*Defendant-Appellant*

————————————

2014-5107

————————————

Appeal from the United States Court of Federal Claims in No. 1:09-CV-00241-NBF, Senior Judge Nancy B. Firestone.

————————————

Decided:  October 5, 2015

————————————

THOMAS SCOTT STEWART, Stewart Wald & McCulley, LLC, Kansas City, MO, argued for plaintiffs-appellees.

MATTHEW LITTLETON, Environment and Natural Resources Division, United States Department of Justice, Washington, DC, argued for defendant-appellant. Also represented by KATHERINE J. BARTON, SAM HIRSCH.

————————————

Before O'MALLEY, CLEVENGER, and HUGHES, *Circuit Judges.*

HUGHES, *Circuit Judge.*

In these Rails-to-Trails cases, the Court of Federal Claims found that the plaintiff-landowners were entitled to just compensation for the inverse condemnation of their respective properties.  In awarding compensation to the landowners, the Court of Federal Claims determined that

an appraiser is not required to take into account the physical remnants of a railroad easement when determining the value of the land before the taking occurred. Because we conclude that an appraiser must consider the value of a landowner's property before the easement, which in this case includes the physical remnants of the railroad, we vacate and remand.

I

The plaintiffs own tracts of land adjacent to three railway corridors in central Iowa. Pursuant to the National Trail System Act Amendments of 1982, the Surface Transportation Board issued Notices of Interim Trail Use (NITUs) for the corridors. NITUs "preserve established railroad rights-of-way for future reactivation of rail service" and permit the railroad operator to cease operation without legally abandoning any "rights-of-way for railroad purposes." 16 U.S.C. § 1247(d). The trial court found that "[b]ut for issuance of the NITU[s], under Iowa law the [railway] easement[s] would have reverted back to plaintiffs upon cessation of railroad operations, and plaintiffs would have enjoyed land unencumbered by any easement." J.A. 583; *see also* J.A. 1981 n.5; J.A. 2106 n.7. Accordingly, the trial court found that a taking occurred.

The court then held a bench trial to determine compensation. Focusing on parcels for which the highest and best use was farmland, the trial court used the "before and after" method to determine the value of the land subject to the government's easement. The court determined that the "before" state of the land should take into account the value of the land as it existed before the NITU easements, but ignore any physical remnants of the railway's use, which would have remained if the railway easement had been permitted to lapse. The government appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## II

We review the Court of Federal Claims' legal conclusions de novo and its findings of fact for clear error. *Otay Mesa Prop., L.P. v. United States*, 670 F.3d 1358, 1363 (Fed. Cir. 2012). The landowners have the burden of establishing the value of the railway corridor, which is a question of fact. *Bd. of Cnty. Supervisors of Prince William Cnty. v. United States*, 276 F.3d 1359, 1364 (Fed. Cir. 2002). But a finding on the value of a railway corridor that "is derived from the application of an improper legal standard to the facts" must be remanded for new factual findings for application of the correct legal standard. *Walther v. Sec'y of Health & Human Servs.*, 485 F.3d 1146, 1152 (Fed. Cir. 2007) (citations omitted).

A landowner subject to a taking is entitled "to be put in as good a position pecuniarily as if his property had not been taken." *Olson v. United States*, 292 U.S. 246, 255 (1934); *Otay Mesa*, 670 F.3d at 1368. The landowner "must be made whole but is not entitled to more." *Id.* Landowners are therefore generally entitled to the fair market value of their land, which is defined as "'what a willing buyer would pay in cash to a willing seller' at the time of the taking." *United States v. 564.54 Acres of Land, More or Less, Situated in Monroe & Pike Cntys.*, 441 U.S. 506, 511 (1979) (quoting *United States v. Miller*, 317 U.S. 369, 374 (1949)) (hereinafter *Lutheran Synod*). And in the easement context, "the 'conventional' method of valuation is the 'before-and-after' method, i.e., 'the difference between the value of the property before and after the Government's easement was imposed.'" *Otay Mesa*, 670 F.3d at 1364 (quoting *United States v. Va. Elec. & Power Co.,* 365 U.S. 624, 632 (1961)).

The issue on appeal is a narrow one. The parties dispute whether or not the "before" condition requires the appraiser to adopt the counterfactual assumption that the expiration of the prior easement—i.e. the easement be-

longing to the railway—would return the property to the landowners free of the physical remnants of the railway's use. The landowners view the "unencumbered" land as not only free of any legal restrictions, but also free of any remnants from the railway's use of the easement such as earthen embankments, ties, and poor soil conditions. The government, however, views the "before" condition as the land as it would have laid but for the issuance of the NITUs, which could include the physical remnants of the railway's use of the land in some circumstances.

We conclude that the fair market value of the land includes the physical remnants of the railway that would have remained on the landowners' property but for the issuance of the NITUs. Here, the trial court found—and the parties do not contest—that but for the government's easement, the railway easements would have lapsed and the land would have returned to the landowners. Because the railway companies did not have an obligation to remove the physical railroad construction features, and there is no evidence in the record that they would have done so, the landowners would have regained possession of their land with the physical structures. *See Macerich Real Estate Co. v. City of Ames*, 433 N.W.2d 726, 730 (Iowa 1988) (interpreting Iowa law pertaining to the abandonment of railway rights, and emphasizing that a railroad has a right to enter and remove the physical track materials). Absent the NITUs, the land would have returned to the landowners with the physical remnants of the railway. A proper appraisal methodology has to account for those physical conditions.

Further, "[i]n ascertaining market value, consideration should be given to all matters that might be brought forward and reasonably be given substantial bargaining weight by persons of ordinary prudence . . . ." Appraisal Institute, *Uniform Appraisal Standards for Federal Land Acquisition* § B-2 (2000 ed.); *see also Lutheran Synod*, 441 U.S. at 511 (defining fair market value). Here, all experts

agreed that a reasonably prudent buyer would consider evidence of an abandoned railway when formulating an offer for agricultural property. Thus, a "before" calculation that does not take into account the costs of removing the physical remnants of the railway will result in an artificially inflated value and yield a windfall to the landowner.[1]  *See Olson*, 292 U.S. at 255 (The property owner "must be made whole but is not entitled to more."); *see also Otay Mesa*, 670 F.3d at 1368 (just compensation "should be carefully tailored to the circumstances of each particular case" (citing *Kimball Laundry Co. v. U.S.*, 338 U.S. 1, 20 (1949)).

## III

Having concluded that the trial court applied the incorrect methodology in calculating the compensation owed to the landowners, we must vacate and remand for new proceedings under the proper standard with both sides having the opportunity to address the valuation for the effects of the remnants.

**VACATED AND REMANDED**

---

[1]  To be sure, the remnants of the railway are also relevant to determining the "highest and best use" of the landowners' property. *See Olson*, 292 U.S. at 255. But the determination of a highest and best use does not obviate the need to determine the fair market value in light of the physical condition of the property. *See, e.g.*, *id.* ("The highest and most profitable use for which the property is adaptable . . . is to be considered, not necessarily as to the measure of value, but to the full extent that the prospect of demand for such use affects the market value while the property is privately held.").